BASSETT, County Treasurer, v. UTAH COPPER CO.

(Circuit Court of Appeals, Eighth Circuit. November 14, 1914.)

No. 4027.

1. APPEAL AND ERROR ⬅719—REVIEW—ERROR NOT ASSIGNED.

Comp. Laws Utah 1907, § 2566, as amended by Laws 1909, c. 63, provides for the assessment of mining property by the state board of equalization, and that any mine owner dissatisfied with the assessment may apply to the board for its correction between certain dates. Sections 2684–2686 provide generally that any property owner may pay a tax under protest, and in an action against the officer to whom it is paid may recover any part which is adjudged illegal. *Held*, that the refusal of a District Court to charge a jury that a corporation mine owner was precluded from maintaining an action under such statute because of its failure to apply to the board of equalization for a correction of its assessment between the dates specified in the statute was not a "plain error," which the Circuit Court of Appeals could consider under rule 11 of the court (188 Fed. ix, 109 C. C. A. ix), in the absence of an assignment of error covering the question, and especially where it was shown that plaintiff's officers had appeared before the board several times prior to the time fixed for such formal application and discussed with it the questions at issue between them.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2968–2982, 3490; Dec. Dig. ⬅719.]

2. TAXATION ⬅366—ASSESSMENT—STATEMENT BY CORPORATION TAXPAYER.

Where the form furnished by a state taxing board to a mining corporation for its annual statement required by statute contained a blank space for the post office address of the person making the same, the fact that such blank was not filled did not invalidate the statement, when the required address was given in full in another place therein.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 612–619; Dec. Dig. ⬅366.]

3. TAXATION ⬅366—ASSESSMENT—STATEMENT BY CORPORATION TAXPAYER— "MANAGING AGENT."

Comp. Laws Utah 1907, § 2566, as amended by Laws 1909, c. 63, requires an annual statement from mine owners to the state board of equalization as a basis for taxation, to be verified, if a corporation, by its "president, secretary, superintendent or managing agent." Plaintiff corporation filed such a statement, verified by one who described himself as "tax agent," and who, it was shown, was the general tax agent of the company. *Held*, that he was a "managing agent" within the meaning of the statute, and that in any event, where the statement was accepted by the board without objection and made the basis for plaintiff's assessment, his authority to make it could not thereafter be questioned (citing Words and Phrases, Managing Agent).

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 612–619; Dec. Dig. ⬅366.]

4. TAXATION ⬅375—ASSESSMENT—VALUATION OF PROCEEDS OF MINES.

Items of expenditure allowable to a mining company as deductions in the valuation of the proceeds of its mines for purposes of taxation, under Comp. Laws Utah 1907, § 2568, as amended by Laws 1909, c. 63, considered.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 624, 631, 671; Dec. Dig. ⬅375.]

In Error to the District Court of the United States for the District of Utah; John A. Marshall, Judge.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Action at law by the Utah Copper Company against Fred C. Bassett, County Treasurer. Judgment for plaintiff, and defendant brings error. Reversed, subject to right of plaintiff to file remittitur.

I. E. Willey and Barnard J. Stewart, both of Salt Lake City, Utah, for plaintiff in error.

A. C. Ellis, Jr., and Russell G. Schulder, both of Salt Lake City, Utah (Dickson, Ellis, Ellis & Schulder, of Salt Lake City, Utah, on the brief), for defendant in error.

Before HOOK and SMITH, Circuit Judges, and AMIDON, District Judge.

SMITH, Circuit Judge. The defendant in error, the Utah Copper Company, hereafter called the plaintiff, is a New Jersey corporation, and is and was during the year 1911 owner of an extensive low-grade copper mine carrying lead and a trace of gold and silver, near Bingham, in Salt Lake county, Utah. The metals in the mine are mixed with silica, and this crude mixture contains about $1\frac{1}{2}$ per cent. of copper and 20 cents in gold and silver to the ton. The Constitution of Utah, which went into effect January 4, 1896, provides (section 4, art. 13):

"All mines and mining claims, both placer and rock in place, containing or bearing gold, silver, copper, lead, coal or other valuable mineral deposits, after purchase thereof from the United States, shall be taxed at the price paid the United States therefor, unless the surface ground, or some part thereof, of such mine or claim, is used for other than mining purposes, and has a separate and independent value for such other purposes; in which case said surface ground, or any part thereof, so used for other than mining purposes, shall be taxed at its value for such other purposes, as provided by law; and all the machinery used in mining, and all property and surface improvements upon or appurtenant to mines and mining claims, which have a value separate and independent of all such mines or mining claims, and the net annual proceeds of all mines and mining claims, shall be taxed by the state board of equalization."

This being not self-executing (Mercur Gold Mining & Milling Co. v. Spry, 16 Utah, 222, 52 Pac. 382), the Legislature passed the following statute (section 2504, Compiled Laws of Utah 1907):

"Sec. 2504. All mines and mining claims, both placer and rock in place, containing or bearing gold, silver, copper, lead, coal, or other valuable mineral deposits, after purchase thereof from the United States, shall be taxed at the price paid the United States therefor, unless surface ground, or some part thereof, of such mine or claim is used for other than mining purposes, and has a separate and independent value for such other purposes; in which case said surface ground, or any part thereof, so used for other than mining purposes shall be taxed at its value for such other purposes; and all the machinery used in mining, and all property and surface improvements upon or appurtenant to mines and mining claims, which have a value separate and independent of such mines or mining claims, and the net annual proceeds of all mines and mining claims, and also the net annual proceeds of coke made from coal, or bullion or matte made from ore not taxed, which is deemed a product of the mines, shall be taxed as other personal property."

In 1909 the Legislature, by chapter 63, passed the following as substitutes for the Compiled Laws indicated:

"Sec. 2513. All property and franchises owned by railroads, street railroads, car, telegraph and telephone, electric light, pipe line, power, canal, ir

rigating and express companies operated in more than one county in this state, and all the machinery used in mining and all property and surface improvements upon or appurtenant to mines and mining claims, which have a value separate and independent of all such mines or mining claims, and the net annual proceeds of all such mines and mining claims, in this state, must be assessed by the state board of equalization as hereinafter provided."

"Sec. 2566. Every person, corporation, or association engaged in mining upon a vein or lode, or placer mining claim, containing any gold, silver, coal or other valuable mineral deposits, must each year, make out a statement of the gross yield of the above named metals or minerals from each mine owned or worked by such person, corporation, or association during the year next preceding the first Monday in January and the value thereof, which statement shall give the fine ounces of gold and silver, and pounds of lead and copper, also the net annual proceeds of coke made from coal, or bullion or matte made from ore not taxed which is deemed a product of mines. Also a statement showing all the machinery used in mining, and all property and surface improvements upon or appurtenant to each mine or mining claim, which have a value separate and independent of all such mines or mining claims owned or worked by such person, corporation or association during the year preceding the first day of January, and the value of the same at twelve o'clock on the first day of January. Such statement must be verified by the oath of such person, or by the president, secretary, superintendent or managing agent of such corporation or association, who must furnish the same to the state board of equalization on or before the second Monday of February in each year. The owner or owners of any mines, dissatisfied with the assessment made upon its net proceeds, or other property, may between the third Monday in May and the second Monday in June apply to the board to have the same corrected in any particular, and the board may correct and increase or lower the assessment made by it to equalize the same with the assessment of other property.

"Sec. 2567. The statement mentioned in the preceding section as to net proceeds of mines must contain a true and correct account of the actual expenditures of money and labor in extracting the ore or mineral from the mine, transporting the same to the mill or reduction works, and the reduction of the ore and the conversion of the same into money, or its equivalent; during the year.

"Sec. 2568. In making the statement of the expenditures mentioned in the preceding section there must be allowed all money expended for necessary labor, machinery, and supplies needed and used in the mining operations, for improvments necessary in and about the workings of the mine for reducing the ore, for the construction of mills and reduction works used and operated in connection with the mine, for transporting the ore, and for extracting the metals and minerals therefrom; but the money invested in the mines or improvements during any year except the year immediately preceding such statement must not be included therein. Such expenditures shall not include the salaries or any portion thereof of any person or officers not actually engaged in the work of the mine, or personally superintending the management thereof."

"Sec. 2571. If any person, corporation, or association engaged in mining, as mentioned herein, refuses or neglects to make and deliver to the state board of equalization the statement mentioned in this chapter, the state board of equalization must assess and list the property, and assess the net proceeds of mines from the best information and knowledge it can obtain. Such person, corporation or association refusing upon demand to furnish such statement to the state board of equalization, shall be subject to a like penalty as is provided in subdivision two, section twenty-five hundred and twenty-one and in section twenty-five hundred and twenty-two, Compiled Laws of Utah 1907, for failure to furnish statement to a county assessor.

"Sec. 2572. Nothing in this title contained shall be construed to exempt from taxation the improvements, buildings, erections, structures, or machinery placed upon any mine or mining claim, or used in connection therewith, which have a value separate and independent of such mine or mining claim, or supplies used either in mills, reduction works or mines, but such property must be assessed as provided by law."

The plaintiff having filed a statement in attempted compliance with section 2566, which showed the net proceeds of the mine for the year 1911 to be $1,835,796.13, the state board of equalization deducted from the credits claimed by the company on account of mining $113,058.76, on reduction $136,350.73, on Arthur mill $885,368.34, on Magna mill $139,545.33, or a total of $1,274,323.16, and added this to the amount reported by the company as net earnings, and assessed the company upon net earnings at $3,110,119.29. This was certified as required by law to the authorities of Salt Lake county, and the plaintiff was taxed thereon $86,974.48. This it paid under protest, and brought suit to recover $35,636.45. The case was tried by the court to a jury, and at the conclusion thereof the court directed the jury to return a verdict for the plaintiff for $29,444.83, and the county treasurer, hereafter called the defendant, sued out this writ of error.

[1] It is first contended that this action would not lie at all because of the closing portion of section 2566:

"The owner or owners of any mines, dissatisfied with the assessment made upon its net proceeds, or other property, may between the third Monday in May and the second Monday in June apply to the board to have the same corrected in any particular, and the board may correct and increase or lower the assessment made by it to equalize the same with the assessment of other property."

It is said that the action of the board under this statute was judicial in character, and the fact that no such application for correction was made defeats this action. Stanley v. Supervisors of Albany, 121 U. S. 535, 7 Sup. Ct. 1234, 30 L. Ed. 1000; Western Union Telegraph Co. v. Gottlieb, 190 U. S. 412, 426, 23 Sup. Ct. 730, 47 L. Ed. 1116. It is provided by rule 11 of this court (188 Fed. ix, 109 C. C. A. ix):

"The plaintiff in error or appellant shall file with the clerk of the court below, with his petition for the writ of error or appeal, an assignment of errors, which shall set out separately and particularly each error asserted and intended to be urged. * * * When this is not done, counsel will not be heard, except at the request of the court; and errors not assigned according to this rule will be disregarded; but the court, at its option, may notice a plain error not assigned."

We find no assignment on this subject conforming to this rule. The only assignment that in the most remote way refers to this particular portion of the statute is the tenth:

"Tenth. The court erred in refusing to give to the jury the following special charge, requested by the defendant: 'The jury are instructed that, under the law of this state, every person, corporation, or association engaged in mining upon a vein or lode, or placer mining claim, containing any gold, silver, coal, or other valuable mineral deposits, must each year make out a statement of the gross yield of the above-named metals or minerals from each mine owned or worked by such person, corporation, or association, during the year next preceding the first Monday in January, and the value thereof, which statement shall give the fine ounces of gold and silver, and pounds of lead and copper, and also the net annual proceeds of coke made from coal, or bullion or matte made from ore are not taxed, which is deemed a product of the mine; also a statement showing all machinery used in mining, and all property and surface improvements upon or appurtenant to each mine or mining claim, which have a value separate and independent of all such mines or mining claims owned or worked by such person, corporation, or association, during the year preceding the 1st day of January, and the value of the same at

12 o'clock on the 1st day of January. Such statement must be verified by the oath of such person, or by the president, secretary, superintendent, or managing agent of such corporation or association, who must furnish the same to the state board of equalization on or before the second Monday of February in each year. The owner or owners of any mine, dissatisfied with the assessment made upon its net proceeds or other property, may between the third Monday in May and the second Monday in June apply to the board to have the same corrected in any particular, and the board may correct and increase or lower the assessment made by it to equalize the same with the assessment of other property. If any person, corporation, or association engaged in mining, as mentioned herein, refuses or neglects to make and deliver to the state board of equalization the statement mentioned in this chapter, the state board of equalization must assess and list the propery and assess the net proceeds of mines from the best information and knowledge it can obtain. Such person, corporation, or association, refusing upon demand to furnish such statement to the state board of equalization, shall be subject to a like penalty as is provided in subdivision 2, section 2521, and section 2522, Compiled Laws of Utah 1907, for failure to furnish statement to a county assessor. If you find that the statement, so required to be made by such person or corporation, was not verified by the oath of the president, or secretary, or superintendent, or managing agent of said corporation, and that the said board of equalization, after a hearing and investigation, determined what said net proceeds of plaintiff's mines were, for the year 1911, and that the same was assessed at $3,110,119.29 as the net proceeds of said mine, then you are instructed that the action of said board, in determining the said net proceeds to be the sum of $3,110,119.29, and the levy and assessment thereon was valid; and you are instructed to bring in a verdict for the defendant.' "

This manifestly has reference to the next point considered by the court, and was not a setting out "particularly" of the question now under consideration. The question at once arises whether this is a plain error, which would permit, if not require, the court to consider the point. This seems to require a consideration of sections 2684, 2685, and 2686 of the Compiled Laws of Utah, which are as follows:

"Sec. 2684. In all cases of levy of taxes, licenses, or other demands for public revenue which is deemed unlawful by the party whose property is thus taxed, or from whom such tax or license is demanded or enforced, such party may pay under protest such tax or license, or any part thereof deemed unlawful, to the officers designated and authorized by law to collect the same; and thereupon the party so paying or his legal representative may bring an action in any court of competent jurisdiction against the officer to whom said tax or license was paid, or against the county or municipality on whose behalf the same was collected, to recover said tax or license or any portion thereof paid under protest.

"Sec. 2685. In case it be determined in such action that said tax or license, or any portion thereof, so paid under protest was unlawfully collected, judgment for recovery thereof and lawful interest thereon, together with costs of action, shall be entered in favor of the plaintiff, and upon being presented with a duly authenticated copy of such judgment, the proper officer or officers of the county or municipality whose officers collected or received such tax or license shall audit and allow such judgment, and cause a warrant to be drawn on the treasurer of that county or municipality for the amount recovered by said judgment in favor of the legal holder thereof; and when any such judgment has been or may hereafter be obtained against a county, and any portion of the taxes included in the judgment were state, state school, county school, or district school taxes which have been or may hereafter be paid over to the state, state school, county school, or to any school district, by such county, the proper officer or officers of the state, state school, county school, or any school district shall, upon demand by such county, cause a warrant to be drawn upon the treasurer of the funds of the state, state school, county school, or any school district, and in favor of such county, for the amount of such taxes received by the state, state school, county school, or any

school district, together with legal interest thereon and an equitable portion of the costs of the action.

".Sec. 2686. The remedy hereby provided shall supersede the remedy of injunction and all other remedies which might be invoked to prevent the collection of taxes or licenses alleged to be irregularly levied or demanded, except in unusual cases where the remedy hereby provided is deemed by the court to be inadequate."

It appears that after the attempted compliance with section 2566 by the plaintiff at the direction and request of the state board the officers and agents of the plaintiff appeared four times before it, and the question of the deductions claimed by the plaintiff corporation were on each of these occasions considered and discussed by the board and the officers of the plaintiff.

In Centennial Eureka Mining Co. v. Juab County, 22 Utah, 395, 62 Pac. 1024, the Supreme Court of Utah had to pass upon the question of an assessment upon the net proceeds of a mine for the period from May 31, 1895, to May 31, 1896. This, it will be noted, was for a period from May 31, 1895, to January 4, 1896, before the present Constitution of the state was adopted, and until April 5th, when the first law was passed to carry into execution the constitutional provision, and the time.from April 5th to the end of the fiscal year, when there were both constitutional and statutory provisions for such tax. Referring to the statute just quoted, the court said:

"When a party pays an unlawful tax under protest, a cause of action, under the provisions of section 180 [sec. 2684] at once accrues in favor of such party to recover such tax."

It is manifest that, even if the provision referred to in section 2566 was applicable to the plaintiff, the failure to hold that no action would lie in the absence of such application is not a plain error, which this court could consider, even were it so inclined.

[2] The second point made is that, the plaintiff having failed to file a statement as required by section 2566 of the Compiled Laws as amended, the assessment was made under section 2571 of said laws. The alleged defect in the statement is that it failed in the verification to give the post office address of the agent, C. M. Brown, and that he was not the managing agent of the plaintiff as required by section 2566.

There was no requirement of law that the verification of the managing agent should show his post office address, except that under chapter 63 of the Laws of 1909, section 2584, in defining the powers of the state board of equalization, in the third subdivision thereof includes the power "to make out and prepare and enforce the use of forms,in,relation to the assessment of property," and the form furnished for the statement provided for in section 2566 has a blank in which to insert the post office address of the affiant. In this case, in place of filling in his post office address at that point, in the caption of the same form he filled in:

"Owner, Utah Copper Company. Residence and post office address, C. M. Brown, Tax Agent, 604 McCornick Building, Salt Lake City, Utah."

The contention that when, upon the form itself furnished by the state board of equalization, the post office address was thus given in full, the failure to fill it in at the particular point a blank was left for

it in his affidavit will defeat the plaintiff's claim for over $27,000 is so refined and technical that to sustain it would bring a court into disrepute. But it is said that C. M. Brown, who made this affidavit, was not the managing agent, as required by section 2566, although he swore he was. The term "managing agent" in this connection has never been defined by the Supreme Court of Utah.

[3] It appears that C. M. Brown has been assessor of Salt Lake county, and after his term was out he was employed by the plaintiff as its general tax agent. The character of his ,employment as tax agent appeared upon the face of the statement, and no criticism of it was ever made by the state board of equalization. In the absence of an authoritative construction by the Supreme Court of Utah, we think that one specially employed as tax agent and in general charge of all the company's tax matters was a managing agent within the meaning of the statute. See 5 Words and Phrases, 4320. Suffice it to say that the board of equalization never raised any question as to his right to make the affidavit, but accepted it and made the assessment by correction of his statement, and it is not for the defendant to successfully raise this question.

[4] This brings us to the merits of this case, and the facts were, so far as is shown, undisputed. It appears that a portion of the mines was leased for the year 1911, and in accounting for receipts the plaintiff only accounted for the royalties paid as rent. It must be remembered that the tax in question is a personal property tax (section 2504, Compiled Laws of Utah 1907), and if any further taxes were to be imposed on account of the portion of the mines leased they should have been assessed to the lessees. Aside from this the plaintiff made an agreement in open court that the entire proceeds of the mining operations of the Utah Copper Company were $12,836,779.82, which included the royalties and no more, and no effort was ever made to cancel this agreement. The state board of equalization allowed $1,954,793.38 as a deduction under the heading of development for stripping. Defendant now asks to have this revised in order to offset apparently the disallowance of some items by the state board of equalization. The contention is that more stripping was done than necessary, but it was not intended the state should take over the management of the mine and say that this shaft was unwise or this stripping improper.

Waiving the question as to the right of the defendant to set up matter that the state board of equalization allowed to furnish an offset to matter it erroneously disallowed, the court is of the opinion that, as the evidence without conflict shows the sum claimed was actually expended for that purpose in the year 1911, it was properly allowed, notwithstanding the ore under the stripping was not all mined that year. If, as is probable, there is ore under the stripping, the state will get its taxes the year it is mined. If there should be no ore under the stripping, the company would have lost the money so spent, and under the state system of taxation it ought to collect nothing on it in the way of taxes. The state board also allowed under the head of development $25,032.19, expended for a dumping ground for still lower grade ore than the average. For the reasons already given as to stripping charged, this was properly allowed by the District Court. The state board

refused to allow plaintiff $1,024,913.67 on account of improvements at the Arthur and Magna Mills, at Garfield, Salt Lake county, Utah. There are no facilities at the mines for the operation of reduction works. There is no adequate supply of water, which is essential to separate 21 tons of silica from every 22 tons of crude material. At the nearest available place, about 12 or 14 miles from the mine in a direct line and about 18 miles by railroad, but within the same county, the plaintiff erected two mills, one called Arthur, and the other called Magna. These mills do no business, except for the plaintiff company. Certain enlargements or improvements were made in them in 1911. The board of equalization refused to allow credit for these works. These sums were clearly expended "for the construction of mills and reduction works used and operated in connection with the mine," and this sum should have been allowed under section 2568 of the Laws of Utah of 1909. It appears, however, that $17,115.48 was expended at the mills in bunkhouses, a messhouse, and a dormitory. These expenditures should not have been included in the reductions. The court allowed as deductions office expenses at Salt Lake City, $38,541, purchasing agent at New York $4,000, and C. M. Brown, tax agent, $375. None of these items should have been allowed.

The conclusion is that the gross deductions, as embraced in the verdict, were $60,731.48 too much. The taxes upon this sum amount to $1,698.35, and the interest at 8 per cent. from the time of payment to the time of trial amounts to $67.55. The total excess of the recovery was therefore, $1,765.90.

It is therefore ordered that, if the defendant in error, the plaintiff below, files with the clerk of the District Court of Utah within 60 days a remittitur from the face of the judgment of $29,444.83 the sum of $1,765.90, thus leaving said judgment at its date for $27,678.93, upon the filing of a certificate to that effect from the clerk of the United States District Court for the District of Utah, the judgment in this case will stand affirmed; otherwise, it will be reversed and remanded, with directions to set aside the verdict and grant a new trial; and in any event there will be a judgment for the costs of this court against the defendant in error.