## BEAVER COUNTY v. SOUTH UTAH MINES AND SMELTERS.*

(Circuit Court of Appeals, Eighth Circuit. January 4, 1927.)

No. 7099.

Taxation ☞63—Tailings dump from mine held not taxable by county as separate property under laws of Utah (Const. Utah, art. 13, §§ 2–4; Comp. Laws Utah 1917, §§ 5864, 5908).

Under Const. Utah, art. 13, §§ 2–4, and Comp. Laws 1917 Utah, §§ 5864, 5908, prior to their amendment in 1919, mineral in place in a mine was not subject to taxation, but in lieu of such taxation a tax was levied by the state board of equalization on the net proceeds of the annual product of mines and mining claims. Under the construction of such provisions by the Supreme Court of the state, proceeds of the treatment of tailings from a mine were of a product of the mine and taxable as such. *Held,* that their taxation was within the exclusive province of the state board of equalization, even though the mine itself had been worked out and abandoned, and that the taxing authorities of a county were without power to tax the tailings dump as a separate item of personal property.

In Error to the District Court of the United States for the District of Utah; Tillman D. Johnson, Judge.

Action at law by the South Utah Mines and Smelters against Beaver County. Judgment for plaintiff, and defendant brings error. Affirmed.

William A. Hilton, of Salt Lake City, Utah (William F. Knox, of Beaver City, Utah, on the brief), for plaintiff in error.

C. C. Parsons, of Salt Lake City, Utah (Dickson, Ellis, Parsons & Adamson, of Salt Lake City, Utah, on the brief), for defendant in error.

Before VAN VALKENBURGH and BOOTH, Circuit Judges, and PHILLIPS, District Judge.

PHILLIPS, District Judge. South Utah Mines and Smelters (hereinafter called plaintiff) brought this action against Beaver county, a municipal corporation, to recover certain taxes paid under protest.

On May 21, 1903, the predecessor in title of plaintiff began the operation of a copper mine in Beaver county, Utah, and thereafter continuously operated the same until October 21, 1909. On the latter date, plaintiff purchased the property and continued the operation thereof until August 4, 1914, when the mine became worked out and was closed down permanently. The plaintiff owned and operated in connection with such mine a concentrating mill, located about three miles from the mine, where the ores removed from the mine were treated and the concentrates removed. As a result of this operation, a large tailings dump was created, containing about 750,000 tons of tailings.

On January 13, 1914, plaintiff entered into an agreement with the Utah Leasing Company, pursuant to which the leasing company erected a flotation plant, treated the tailings in the dump, and extracted the mineral values therefrom, paying the plaintiff a royalty of 10 per cent. on the mineral values which it recovered from the dump. The leasing company completed the treatment of the dump in the early part of the year 1919.

The method of general taxation provided by the Constitution and statutes of the state of Utah was and is that the real and personal property in the state not exempt, and for which no other specific method of taxation was prescribed, should be assessed by the county assessors at its true value in money, and taxed by the county taxing officers uniformly in proportion to its value. Constitution of Utah, art. 13, §§ 2, 3.

Prior to its amendment on January 1, 1919, section 4 of article 13 of the Constitution of Utah read as follows:

"All mines and mining claims, both placer and rock in place, containing or bearing gold, silver, copper, lead, coal or other valuable mineral deposits, after purchase thereof from the United States, shall be taxed at the price paid the United States therefor, unless the surface ground, or some part thereof, of such mine or claim, is used for other than mining purposes, and has a separate and independent value for such other purposes; in which case said surface ground, or any part thereof, so used for other than mining purposes, shall be taxed at its value for such other purposes, as provided by law; and all the machinery used in mining, and all property and surface improvements upon or appurtenant to mines and mining claims, which have a value separate and independent of all such mines or mining claims, and the net annual proceeds of all mines and mining

claims, shall be taxed by the state board of equalization."

Section 5864, Comp. Laws of Utah 1917, provided:

"All mines and mining claims, both placer and rock in place, containing or bearing gold, silver, copper, lead, coal, or other valuable mineral deposits, after purchase thereof from the United States, shall be taxed at the price paid the United States therefor, unless surface ground, or some part thereof, of such mine or claim is used for other than mining purposes, and has a separate and independent value for such other purposes; in which case said surface ground, or any part thereof, so used for other than mining purposes shall be taxed at its value for such other purposes; and all the machinery used in mining, and all property and surface improvements upon or appurtenant to mines and mining claims, which have a value separate and independent of such mines or mining claims, and the net annual proceeds of all mines and mining claims, and also the net annual proceeds of coke made from coal, or bullion or matte made from ore not taxed, which is deemed a product of the mines, shall be taxed as other personal property."

On January 1, 1919, there went into effect in the state of Utah an amendment of section 4, art. 13, of the Constitution. See Laws 1917, p. 474. This section as amended read as follows:

"All metalliferous mines or mining claims, both placer and rock in place shall be assessed at $5.00 per acre, and in addition thereto at a value based on some multiple or submultiple of the net annual proceeds thereof. All other mines or mining claims and other valuable mineral deposits, including lands containing coal or hydrocarbons, shall be assessed at their full value. All machinery used in mining and all property or surface improvements upon or appurtenant to mines or mining claims, and the value of any surface use made of mining claims, or mining property for other than mining purposes, shall be assessed at full value. The state board of equalization shall assess and tax all property herein enumerated, provided that the assessment of $5.00 per acre and the assessment of the value of any use other than for mining purposes shall be made as provided by law."

At the legislative session of 1919 (Laws 1919, c. 114, § 1), the Legislature of Utah amended section 5864 of the Compiled Laws of Utah of 1917, to read as follows:

"All metalliferous mines or mining claims, both placer and rock in place shall be as-

sessed at $5.00 per acre, and in addition thereto at a value determined by taking the multiple of three times the net annual proceeds thereof. All other mines or mining claims and other valuable mineral deposits, including lands containing coal or hydrocarbons, shall be assessed at their full value. All machinery used in mining and all property or surface improvements upon or appurtenant to mines or mining claims, and the value of any surface use made of mining claims or mining property for other than mining purposes, shall be assessed at full value. For the purposes of this section, all mills, reduction works and smelters used exclusively for the purpose of reducing or smelting the ores from a mine or mining claim by the owner thereof shall be deemed to be appurtenant to such mine or mining claim though the same is not upon such mine or mining claim. In all cases where the surface of lands is owned by one person and the mineral underlying such lands is owned by another, such property rights shall be separately assessed to the respective owners.

"The words 'net annual proceeds' of a metalliferous mine or mining claim as used in this section are defined to be the net proceeds realized during the preceding calendar year from the sale, or conversion into money, or its equivalent, of all ores from such mine or mining claim extracted by the owner or lessee, contractor or other person working upon or operating the property, during or previous to the year for which the assessment is made, including all dumps and tailing after making the following and no other deductions from the gross proceeds thereof. * * *"

The net proceeds derived from the tailings dump by the leasing company in the year 1918 amounted to a sum slightly in excess of $120,000. In 1919, the state board of equalization undertook to value under the new provisions of the Constitution and statutes of Utah the worked-out and abandoned mine of plaintiff by multiplying the net proceeds received from the treatment of the dump by three, and fixed the value of plaintiff's mine at $360,000. Plaintiff paid the taxes assessed thereon and brought suit to recover the same. The trial court found against the plaintiff, and the cause was taken by writ of error to the Supreme Court of the United States. That court held that the assessment was invalid, reversed the judgment of the trial court, and remanded the cause for a new trial. South Utah Mines and Smelters v. Beaver County, 262 U. S. 325, 43 S. Ct. 577, 67 L. Ed. 1004.

Thereafter, the county taxing authorities of Beaver county conceived that the assessments made by the state board of equalization during the period from 1915 to 1918, inclusive, against the net proceeds derived from such tailings dump under the former constitutional and statutory provisions of Utah, were void, and undertook to assess such tailings dump as a separate item of personal property for those years. The plaintiff duly paid the taxes assessed by the state board of equalization. It also paid under protest the taxes based upon such assessments by the county authorities, and brought this action under the provisions of section 6094, Compiled Laws of Utah 1917, to recover back the amounts paid under protest. The trial court directed a verdict for the plaintiff, judgment was entered thereon, and the county sued out a writ of error to this court.

The contention of the county is that the assessments made by the state board of equalization against the tailings dump were void, that therefore such tailings dump was property omitted from taxation, and that the county authorities had the right to assess the tailings dump as omitted property for the years 1915 to 1918, inclusive, under the provisions of section 5908, Compiled Laws of Utah 1917.

It will be noted that under the Constitution and laws of the state of Utah, prior to 1919, the value of mineral in place was not subject to taxation, but only the surface value, the improvements, and the net product of mines were subject to taxation.

These provisions of the Constitution and statutes of Utah have been fully considered and construed by the Supreme Court of that state.

In Mercur Gold Mining & Milling Co. v. Spry, 16 Utah, 222, 52 P. 382, the court said:

"Section 4, art. 13, of the Constitution, requires that all net annual products of all mines and mining claims shall be taxed as provided by law. This is a limitation on the power of the legislature, so that, so far as the product is concerned, nothing can be taxed except the net annual product of the mine. * * *

"By the term 'net annual proceeds of the mine' is meant what is annually realized from the product of the mine, over and above all the costs and expenses of obtaining such proceeds and converting the same into money. * * *

"With respect to the taxation of the net annual product of a mine, it must have been contemplated that the product should be ascertained at the end of the fiscal year, and should not be simply estimated by the assessor on the basis of its net product the previous year. Nor could it have been intended that the assessment should be levied unless there was some net annual product to levy it upon at the end of the year."

In Mammoth Mining Co. v. Juab County, 51 Utah, 316, 170 P. 78, the court said:

"It is too manifest to require argument that under the statute, for the purpose of taxing the net proceeds of mines, the cost of mining, etc., incurred in any one year must be considered independently from the cost, etc., incurred in any other year; that is, only such costs as are incurred during the year in which the net proceeds are obtained may be considered. * * *

"The statute does not concern itself with costs or deficits that arose in any year, except those incurred during the year in which the net proceeds are obtained. It is not a question of whether the mine owner or operator gains net proceeds or net profits from his mine when considered as a business venture, but the only question is: Did the mine or mining properties yield net proceeds for the particular year in which they are assessed?"

In the case of Nephi Plaster & Mfg. Co. v. Juab County, 33 Utah, 114, 93 P. 53, 14 L. R. A. (N. S.) 1043, the question was whether the manufactured products of gypsum extracted from placer mining claims should be taxed upon the basis of the net annual proceeds derived therefrom when sold on the market as net products of the mine or as personal property, and it was held that such manufactured articles were products of a mine, and only such net proceeds could be taxed.

In Mammoth Mining Co. v. Juab County, supra, the mining company, between the years 1876 and 1890, in the operation of its mine, developed certain ores which were then of too low a grade to be profitably shipped and reduced. Those ores, from year to year, were placed in a dump. In the year 1913, when cheaper processes of reducing ores had been discovered, they then could be and were shipped and reduced at a profit. The taxes in question arose in part from an assessment upon the net proceeds derived from the sale of the ores in this dump in the year 1913. In the opinion, the court said: "Nor does it make any difference whether the ores are obtained from the mine or from a dump, if in fact they were at some time taken from the mine."

This court, in the case of Salt Lake County v. Utah Copper Co., 294 F. 199, passed upon the validity of the assessment and taxation of a tailings dump for the years 1917 and 1918. The material facts in that case and this case are substantially the same, except that the assessments in the instant case were made for the years 1915 to 1918, inclusive, and the mine from which the tailings were removed was worked out and closed down in August, 1914, while, in the Salt Lake County Case, the assessments were made for the years 1917 and 1918, and the mine from which the tailings were removed was operated during those two years.

In the opinion in the Salt Lake County Case, the court said:

"The question recurs: Were these tailings, in the light of the facts which have been recited, taxable in 1917 and 1918 to the plaintiff in proportion to their value estimated by the county taxing officers; or were they taxable by the state board of equalization on the basis of their net annual proceeds? There can be no doubt that the state of Utah intended to substitute, and by its Constitution and statutes in effect did substitute, the taxation by its board of equalization of the net annual proceeds of mines and mining claims for the taxation of such mines and mining claims in proportion to their value estimated by the taxing officers of the county and that it thereby exempted them from taxation by the latter. It seems certain that after the annual proceeds of this mine were taxed for 1917 and 1918 by the board of equalization, as they probably were, neither the mine itself nor the net annual proceeds thereof could be lawfully taxed again for those years by the taxing officers of the county. Nor does it seem doubtful that, if they were not so taxed by the state board of equalization, nevertheless they could not lawfully be taxed by the taxing officers of the county, because the state had vested the exclusive power to tax them in the state board of equalization. * * *

"Counsel for the county contend that, although the tailings here under consideration are a part of the proceeds of the mine, they may be taxed as other personal property, and that the statutes do not contemplate that such products must be converted into cash before the proceeds tax shall attach, but that the gross yield from the mine with its value should be reported for taxation. The answer is that in the Mercur Co. Case the Supreme Court of Utah said:

" 'By the term "net annual proceeds of the mine" is meant what is annually realized from the product of the mine over and above all the costs and expenses of obtaining such proceeds and converting the same into money.' 16 Utah, 228, 52 P. 384.

"And section 5930 of the statutes which were enacted to prescribe a method of ascertaining the net annual proceeds declares that the statement of the owner or operator of his expenditures required in the preceding section must contain an account 'of the actual expenditures of money and labor in extracting the ore or mineral from the mine, transporting the same to the mill or reduction works, and the reduction of the ore and the conversion of the same into money, or its equivalent, during the year.' * * *

"These tailings are a product of the plaintiff's mine."

From the foregoing it will be seen that the Constitution and statutes of Utah prior to the year 1919 provided that, in lieu of the evaluation of minerals in place and the levying of taxes upon such valuation annually, a tax should be levied by the state board of equalization upon the products of mines and mining claims in each fiscal year that the sale of such products resulted in net proceeds or profits after deducting the costs and expenses of obtaining such products and converting the same into money incurred during such fiscal year; that such lieu taxes should be levied upon such net proceeds or profits; that such lieu taxes should not accrue until such products were sold and converted into cash; and that until such products of a mine or mining claim were sold by the owner or operator of such mine they should be exempt from all taxation except such tax on the net proceeds or profits.

Counsel for the county earnestly urge that the decision of the Supreme Court in South Utah M. & S. v. Beaver County, supra, is determinative of the instant case, and that the decision of this court in Salt Lake County v. Utah C. Co., supra, is not in point, because the mine from which the tailings in that case had been removed was a going mine during the years when the net proceeds were realized and taxed, and that in the instant case the mine was closed down and abandoned before the net proceeds were realized and taxed. The difficulty with counsel's position is that they fail to take into account the change in the method of taxing metalliferous mines in Utah in 1919. In that year a method was adopted whereby the value of mineral in place was annually determined and assessed by multiplying the net

annual proceeds of the preceding year by the multiple of three, whereas, prior to 1919, as shown above, mineral in place in a mine was not subject to taxation, but in lieu of such taxation, a tax was levied upon the net proceeds derived from the sale of the product ,of the mine.

The Supreme Court in South Utah M. & S. v. Beaver County, supra, did not decide that it would be unlawful to assess the net proceeds derived from the treatment of a tailings dump, nor did it decide that it would be unlawful to determine the value for the purposes of assessment of a tailings dump by multiplying the net proceeds derived therefrom during the preceding year by the multiple of three. But it held that it was unreasonable and unlawful to place a fictitious value upon mineral in place in a worked-out and abandoned mine by multiplying by three the value of the net proceeds derived from a tailings dump long theretofore removed from the mine when both at the time of such assessment and during the preceding year there was no mineral in place in such mine. In that case, in order to sustain the tax, it would have been necessary to hold that the tailings dump was a mine. In the instant case, the assessments made by the state board of equalization were valid, if the tailings dump was the product of a mine.

It is immaterial that plaintiff's mine was worked out and abandoned at the time the net proceeds were realized from the ore in the tailings dump, because the tax took the place of an assessment upon the mineral when it was in place in the mine, although it did not accrue until the mineral was sold and converted into cash. In view of these facts we can see no distinction between the instant case and Salt Lake County v. Utah Copper Co., supra.

From the foregoing we conclude:

That the tailings dump in question during the years 1915 to 1918, inclusive, was the product of a mine; that during those years it was not subject to taxation as a separate item of personal property, but only the net proceeds derived therefrom could be taxed; that the state board of equalization taxed the tailings dump in question as the product of a mine in all of the years of the period in question in which it produced net proceeds; that such assessments were lawful, and that the tailings dump was not subject to taxation during those years by the county authorities as omitted personal property.

The judgment is therefore affirmed.