## KENNECOTT COPPER CORP. *v.* STATE TAX COMMISSION ET AL.

NO. 424.

Argued January 30, 31, 1946.—Decided March 25, 1946.

*C. C. Parsons* and *Charles A. Horsky* argued the cause for petitioners. With *Mr. Parsons* on the brief was *H. Thomas Austern.*

*Arthur H. Nielsen* and *Zar E. Hayes,* Assistant Attorneys General of Utah, argued the cause for respondents. With them on the brief were *Grover A. Giles,* Attorney General, and *Wayne Christoffersen.*

MR. JUSTICE REED delivered the opinion of the Court.

Whether Utah has submitted itself to suit in the United States District Court for the District of Utah for the recovery of taxes alleged to be wrongfully exacted by that State is the ultimate issue brought here by these writs of certiorari. Preliminarily, we must decide if the present proceeding is a suit against Utah.

Petitioners, corporations and citizens of New York and Nevada respectively, carry on mining businesses in Utah. That State imposes on those there engaged in the mining business an occupation tax equal to one per cent of the gross amount received for or the gross value of metalliferous ore sold during the preceding calendar year. The State Tax Commission administers the Act. Utah Code Annotated (1943) §§ 80-5-65 to 80-5-82, inclusive. For the purposes of this opinion, it need only be said as to the facts which give rise to this litigation, that petitioners seek recovery of that portion of their occupation taxes for 1944 which was calculated by the Tax Commission by including in the gross amount received by petitioners for their ore certain subsidies for war production paid to petitioners by the United States pursuant to an order of the Office of Price Administration, dated February 9, 1942, No. P. M. 2458. Petitioners assert that this subsidy should not be included in their occupational tax base. As the Tax Commission did include the subsidies in the base after administrative rulings which denied petitioners' claims, petitioners each paid the total tax levied, protested that portion thereof which was based upon the subsidy and brought suit in the United States District Court for the District of Utah against the State Tax Commission, and

the individuals "constituting" it as "members," for the recovery of the protested amount under sections of the Utah Code (1943), set out below, which petitioners claim authorize these proceedings.[1]

The causes present identical questions. They were consolidated for trial in the District Court and separate judgments were entered for plaintiffs against the "State Tax Commission, et al." for the amounts claimed. 60 F. Supp. 181. Separate appeals were perfected to the Circuit Court of Appeals. The cases were there briefed, argued and decided together but with separate judgments reversing the District Court with directions to dismiss without prejudice since it was a suit against the State without its consent. *State Tax Commission* v. *Kennecott Copper Corp.*, 150 F. 2d 905. On account of the importance of the issues, we granted certiorari to determine whether the basis of the decisions in *Great Northern Ins. Co.* v. *Read*, 322 U. S. 47, and *Ford Co.* v. *Department of*

---

[1] Utah Code Anno. 1943, 80–5–76:

"No court of this state except the supreme court shall have jurisdiction to review, alter, or annul any decision of the tax commission or to suspend or delay the operation or execution thereof; *provided*, any taxpayer may pay his occupation tax under protest and thereafter bring an action in any court of competent jurisdiction for the return thereof as provided by section 80–11–11, Revised Statutes of Utah, 1933."

*Id.*, 80–11–11 (this is identical with Revised Statutes of Utah, 1933):

"In all cases of levy of taxes, licenses, or other demands for public revenue which is deemed unlawful by the party whose property is thus taxed, or from whom such tax or license is demanded or enforced, such party may pay under protest such tax or license, or any part thereof deemed unlawful, to the officers designated and authorized by law to collect the same; and thereupon the party so paying or his legal representative may bring an action in any court of competent jurisdiction against the officer to whom said tax or license was paid, or against the state, county, municipality or other taxing unit on whose behalf the same was collected, to recover said tax or license or any portion thereof paid under protest."

*Treasury*, 323 U. S. 459, encompassed the circumstances of these cases. A single opinion suffices here also.

Federal jurisdiction is claimed under diversity of citizenship and because the controversy arises under the Constitution and laws of the United States. The claim is that the inclusion of the subsidy in the tax base interferes with the War Power of Congress and the Emergency Price Control Act of 1942, 50 U. S. C. §§ 901, 902 (e), by taxing the subsidy on surplus production over fixed quotas with the result that a part of the subsidy was diverted from its sole purpose of insuring the maximum necessary production. See Revenue Act of 1942, §§ 209, 735, 56 Stat. 904, 907.

As we conclude that these suits are suits against Utah and that Utah has not consented to be sued for these alleged wrongful tax exactions in the federal courts, we express no opinion upon the merits of the controversy.

This is a suit against the State. Utah has established an adequate procedure for the recovery of taxes illegally collected. When the State collects a tax under protest, the money is segregated and held for the determination of the taxpayers' rights with provision for any deficiency for interest or costs to be paid by the State.[2] The Mining Occu-

---

[2] Utah Code Anno. 1943, 80–11–13:

"In case any tax or license shall be paid to the state under protest, said tax or license so paid shall not be covered into the general fund but shall be held and retained by the state treasurer and shall not be expended until the time for the filing of an action for the recovery of said tax or license shall have expired, and in case an action has been filed, until it shall have been finally determined that said tax or license was lawfully or was unlawfully collected. If in any such action it shall be finally determined that said tax or license was unlawfully collected, the officer collecting said tax or license shall forthwith approve a claim for the amount of said tax or license adjudged to have been unlawfully collected, together with costs and interest as provided by law, and any excess amount in excess of said tax required to pay said claim, including interest and costs, shall be repaid out of any unappropriated funds in the hands of the state treasurer, or, in case it is necessary, a deficit for said amount shall be authorized."

pation Tax makes the State Tax Commission the state agency for administration and collection of the Utah tax. The petitioners paid their taxes to the Commission under protest and brought these actions to recover the contested portion.

Petitioners alleged compliance with the Act's requirements for reports, assessments and administrative remedies with payment under protest of the controverted sums for Utah to the "State Tax Commission" only. The Commission, alone, is charged to have "exacted final payment" and to have acquiesced in plaintiffs' demand in accordance with statutory requirements to show payment and protest on the Commission's books with resultant segregation of the funds collected from Utah's general funds.

As the suits were against the Commission and the members as "constituting" such Commission, were based upon the payment to the Commission as collector for Utah and sought recovery of the fund, sequestered by § 80–11–13, together with the interest and costs therein provided for, we are satisfied these are suits against Utah. *Mine Safety Appliances Co.* v. *Forrestal,* 326 U. S. 371; *Great Northern Ins. Co.* v. *Read,* 322 U. S. 47, 51; *Ford Co.* v. *Department of Treasury,* 323 U. S. 459, 462.

Upon the question of the consent of Utah to suit against itself in the federal courts for controversies arising under the Federal Constitution, little needs to be added to our discussion in the *Read* and *Ford* cases. These cases declare the rule that clear declaration of a State's consent to suit against itself in the federal court on fiscal claims is required. The reason underlying the rule, which is discussed at length in the *Read* and *Ford* cases, is the right of a State to reserve for its courts the primary consideration and decision of its own tax litigation because of the direct impact of such litigation upon its finances.

Petitioners point to distinctions between the present cases and those to which reference has just been made.

They call attention to the history of the section authorizing recovery of taxes unlawfully collected. Section 80–11–11 was enacted in 1896 without the inclusion of the State as a possible defendant. Laws of Utah 1896, Ch. cxxix, § 180, p. 466. It was amended in 1933 when the words "state" and "or other taxing unit" were added. Petitioners urge that since the phrase "in any court of competent jurisdiction" had been assumed to permit suits in the federal courts that practice should be read into the word "state" when that entity was made subject to tax suits.[3]

It is also urged that "any court of competent jurisdiction" has long been construed in the federal statutes as including both state and federal courts.[4] Our attention is directed to § 80–5–76 limiting statutory review of administrative decisions of the Mining Occupation Tax to the Supreme Court of the State while allowing suits for recovery of unlawful taxes paid under protest to "any court of competent jurisdiction."

For these reasons petitioners contend that the Utah statutes indicate an intention to permit suits against the State in federal courts. Furthermore, petitioners find significance in variations between the state statutes in the *Read* case and the *Ford* case on one hand and the Utah statutes on the other. Petitioners show that we place reliance in both cases on the procedural requirements of the respective statutes of Oklahoma and Indiana.[5] We said in those cases that since state laws could not affect procedure in federal courts, it was to be inferred that only state courts were included in the States' consent to suit.

---

[3] These examples of suits in federal courts were cited: *Bassett* v. *Utah Copper Co.*, 219 F. 811 (§ 80–11–11 was then § 2684); *South Utah Mines* v. *Beaver County*, 262 U. S. 325 (§ 2684); *Salt Lake County* v. *Utah Copper Co.*, 294 F. 199; *Beaver County* v. *South Utah Mines & Smelters*, 17 F. 2d 577.

[4] *Shoshone Mining Co.* v. *Rutter*, 177 U. S. 505, 506.

[5] 322 U. S. at 55; 323 U. S. at 465–66.

The bases for inference advanced by petitioners might logically lead to a conclusion that Utah intended to submit the interpretation of its tax statutes to federal trial courts where the controversies arise under federal law. On the other hand, it may be cogently argued that the practice of treating the federal courts as courts of competent jurisdiction under § 80–11–11 before the addition of the State as a possible defendant resulted from the fact that consent was not necessary for suits against counties and municipalities.[6] It could be urged that grants of jurisdiction to courts of competent jurisdiction by federal legislation for the benefit of litigants other than the United States are not persuasive as to the intent of a State to consent to suits in federal courts.[7] We are informed that Utah employs explicit language to indicate, in other litigation, its consent to suits in federal courts.[8] It is to be noted that the cases under consideration illustrate the disadvantage of deducing from equivocal language a State's consent to suit in the federal courts on causes of action arising under state tax statutes. The disadvantage referred to is that, if the merits were to be passed upon, the initial interpretation of the meaning and application of a state statute would have to be made by a federal court without a previous authoritative interpretation of the statute by the highest court of the State. See *Spector Motor Co. v. McLaughlin,* 323 U. S. 101, 103–105.

We conclude that the Utah statutes fall short of the clear declaration by a State of its consent to be sued in

---

[6] *Lincoln County* v. *Luning,* 133 U. S. 529; *Chicot County* v. *Sherwood,* 148 U. S. 529. See *Hopkins* v. *Clemson College,* 221 U. S. 636.

[7] Compare *Minnesota* v. *United States,* 305 U. S. 382, 389.

[8] Utah Code Anno. 1943, 104–3–27:

"Upon the conditions herein prescribed the consent of the state of Utah is given to be named a party in any suit which is now pending or which may hereafter be brought in any court of this state or of the United States for the recovery of any property real or personal . . ."

the federal courts which we think is required before federal courts should undertake adjudication of the claims of taxpayers against a State.

*Affirmed.*

The CHIEF JUSTICE and MR. JUSTICE JACKSON took no part in the consideration or decision of this case.

MR. JUSTICE FRANKFURTER dissenting, with whom MR. JUSTICE DOUGLAS and MR. JUSTICE BURTON concur.

Even while the Civil War was raging Lincoln deemed it important to ask Congress to authorize the Court of Claims to render judgments against the Government. He did so on the score of public morality. "It is," wrote Lincoln in his First Annual Message, "as much the duty of Government to render prompt justice against itself in favor of citizens as it is to administer the same between private individuals. The investigation and adjudication of claims in their nature belong to the judicial department." 7 Richardson, Messages and Papers of the Presidents, 3245, 3252. Both the United States and the States are immune from suit unless they agree to be sued. Though this immunity from suit without consent is embodied in the Constitution, it is an anachronistic survival of monarchical privilege, and runs counter to democratic notions of the moral responsibility of the State.

Not so long ago this Court acted on the realization that "the present climate of opinion . . . has brought governmental immunity from suit into disfavor." *Keifer & Keifer* v. *R. F. C.,* 306 U. S. 381, 391. Today the Court treats governmental immunity from suit as though it were a principle of justice which must be safeguarded even to the point of giving a State's authorization to be sued the most strained construction, whereby a federal court sitting in Utah is made to appear not a "court of competent jurisdiction." Thus, while during the last seventy-five years governmental immunity from suit, as a doctrine without

moral validity, has been progressively contracted, the Court now takes a backward step by enhancing a discredited doctrine through artificial construction.

In doing so the Court also disregards the historic relationship between the federal and the State courts. It treats a federal court sitting in a State as though it were the court of an alien power. The fact is that throughout our history the courts of a State and the federal courts sitting in that State were deemed to be "courts of a common country." *Minneapolis & St. Louis R. Co.* v. *Bombolis,* 241 U. S. 211, 222. As a result, federal rights were enforced in State courts and a federal court sitting in a State was deemed to be "a court of that State," even as to a litigation like that of a condemnation proceeding which would appear to be peculiarly confined to a State court. *Madisonville Traction Co.* v. *St. Bernard Mining Co.,* 196 U. S. 239, 255–56; *Ex parte Schollenberger,* 96 U. S. 369, 377; *Neirbo Co.* v. *Bethlehem Corp.,* 308 U. S. 165, 171.

A State may of course limit its consent to suit in its own courts. It may do so by explicit language or by implication through procedural requirements and restrictions which could not be satisfied by a federal court sitting in the State. Such were the grounds of the recent decisions in *Great Northern Life Insurance Co.* v. *Read,* 322 U. S. 47, and *Ford Motor Co.* v. *Department of Treasury,* 323 U. S. 459. These decisions, as the Court concedes, relied on procedural requirements of the respective statutes of Oklahoma and Indiana which the federal courts in these States could not meet. Therefore, those statutes impliedly granted the State's consent to be sued only in the State courts, for only these could meet the State's procedural requirements.

Utah made no restriction on the right to sue. The statute giving consent to suit merely requires the court in which suit may be brought to be a "court of competent jurisdiction." That the District Court for the District of

Utah is otherwise a "court of competent jurisdiction" is not gainsaid. How could the State include the United States District Court in its consent to be sued in a "court of competent jurisdiction" short of stating explicitly that a "court of competent jurisdiction" shall include the federal courts? The opinion does not say that nothing short of such specific authorization to sue in the federal court gives the State's consent to be sued there. But if such a formal requirement be the meaning of the present decision, it runs counter to a long course of adjudication and pays undue obeisance to a doctrine, that of governmental immunity from suit, which, whatever claims it may have, does not have the support of any principle of justice.