SAC AND FOX NATION OF MISSOURI, Iowa Tribe of Kansas and Nebraska, Kickapoo Tribe of Indians of the Kickapoo Reservation in Kansas, Plaintiffs,

v.

John D. LAFAVER, Secretary Kansas Department of Revenue, Defendant.

No. CIV.A. 95–4152–DES.

United States District Court, D. Kansas.

Sept. 4, 1997.

---

2. Neither side has offered the court much in analysis or research on this novel issue.

Mark S. Gunnison, Stephen D. McGiffert, Payne & Jones, Chtd., Overland Park, KS, George Forman, John R. Shordike, Patricia Prochaska, Berkeley, CA, Paul Alexander, Alexander & Karshmer, Washington, DC, for Sac and Fox Nation of Missouri.

Mark S. Gunnison, Stephen D. McGiffert, Payne & Jones, Chtd., Overland Park, KS, for Iowa Tribe of Kansas & Nebraska.

Pedro L. Irigonegaray, Robert V. Eye, Irigonegaray & Associates, Topeka, KS, Lance W. Burr, Lawrence, KS, Mario Gonzalez, Horton, KS, for The Kickapoo Tribe of Indians.

Lester N. Collier, Legal Services Bureau, Kansas Dept. of Revenue, Topeka, KS, John Michael Hale, Amy Weller Liebau, Kansas Dept. of Revenue, Bureau of Legal Services, Topeka, KS, for John D. Lafaver.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on defendant's Motion to Dismiss (Doc. 55). For the reasons set forth below, defendant's motion is denied.

## I. BACKGROUND

The plaintiffs are three federally-recognized Indian Tribes: The Sac and Fox Nation of Missouri ("Sac and Fox"); the Iowa Tribe of Kansas and Nebraska ("Iowa"); and the Kickapoo Tribe of Indians of the Kickapoo Reservation in Kansas ("Kickapoo") (collectively the "Tribes"). Sac and Fox is the beneficial owner of and exercises jurisdiction over the Sac and Fox Indian Reservation, as well as land located at Reserve, Kansas, which land is held in trust for Sac and Fox by the United States of America. Iowa is the beneficial owner of and exercises jurisdiction over the Iowa Tribe of Kansas and Nebraska Indian Reservation. A part of the Iowa land is held in trust for Iowa by the United States of America. Kickapoo is the beneficial owner of and exercises jurisdiction over land within the Kickapoo Nation's federally recognized boundaries, which land is held in trust for Kickapoo by the United States of America. All three plaintiffs operate retail gasoline stations on their reservations, and assess tribal taxes on their motor fuel sales.

On May 7, 1995, the Kansas Legislature passed Senate Bill 88 ("SB 88"), which is codified at Kan. Stat. Ann. § 79–3408g(d)(2). Section 79–3408g(d)(2) provides as follows:

No tax is hereby imposed upon or with respect to the following transactions: ... (2) The sale or delivery of motor-vehicle fuel or special fuel to the United States of America and such of its agencies as are now or hereafter exempt by law from liability to state taxation, except that this exemption shall not be allowed if the sale or delivery of motor-vehicle fuel or special fuel is to a retail dealer located on an Indian reservation in the state and such motor-vehicle fuel or special fuel is sold or delivered to a nonmember of such reservation.

On May 17, 1995, the legislature passed House Bill 2161 ("HB 2161"), which is codified at Kan. Stat. Ann. § 79–3408(d)(2). Section 79–3408(d)(2) contains the exemption language of section 79–3408g(d)(2), but does not contain the exception for deliveries to nonmembers of Indian reservations. Section 79–3408(d)(2) reads as follows: "No tax is hereby imposed upon or with respect to the following transactions: ... (2) The sale or delivery of motor-vehicle fuel or special fuel to the United States of America and such of its agencies as are now or hereafter exempt by law from liability to state taxation."

On September 6, 1995, the Kansas Department of Revenue ("DOR") announced its intention to begin collecting tax on motor fuel sales on Indian lands, including sales from distributors to plaintiffs. Plaintiffs challenged the imposition of this tax and alleged

that the Kansas statutes purporting to subject the Tribes to the state's motor fuels tax are unconstitutional and preempted by federal law. On October 5, 1995, this court entered a temporary restraining order enjoining and restraining DOR from applying and enforcing the collection of any motor fuels tax on tribal retail motor fuel sales on Indian lands, including sales from distributors to plaintiffs, as outlined in Senate Bill No. 88, signed on May 7, 1995, and House Bill No. 2161, signed on May 17, 1995, and implemented on September 6, 1995. The court further ordered that the temporary restraining order would be effective until such time as the court had ruled on plaintiffs' motion for preliminary injunction.

After several requests for continuance from the parties, the court heard arguments on the preliminary injunction on September 30, 1996. On October 30, 1996, the court granted plaintiffs' Motion for Issuance of Preliminary Injunction (Doc. 3) and enjoined DOR from applying or enforcing the Kansas motor fuels tax on motor fuel sales on Indian lands, including sales from distributors to the Tribes, as implemented on September 6, 1995, pending adjudication of the plaintiffs' claims. Defendant now moves the court to dismiss the action, pursuant to Fed.R.Civ.P. 12(b)(1), for lack of jurisdiction.

## II. 12(b)(1) MOTION TO DISMISS STANDARDS

 Federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so. *Castaneda v. INS,* 23 F.3d 1576, 1580 (10th Cir.1994). "A court lacking jurisdiction must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." *Scheideman v. Shawnee County Bd. of County Comm'rs,* 895 F.Supp. 279, 280 (D.Kan.1995) (citing *Basso v. Utah Power and Light Co.,* 495 F.2d 906, 909 (10th Cir.1974)); Fed.R.Civ.P. 12(h)(3). The party seeking to invoke a federal court's jurisdiction sustains the burden of establishing that such jurisdiction is proper. *Id.* When federal jurisdiction is challenged, the plaintiff bears the burden of showing why the case should not be dismissed. *Jensen v. Johnson County Youth*

*Baseball,* 838 F.Supp. 1437, 1439–40 (D.Kan. 1993).

## III. DISCUSSION

Plaintiffs bring their claims for declaratory and injunctive relief pursuant to 28 U.S.C. § 1362, which grants to the district courts original jurisdiction over civil actions brought by federally-recognized Indian Tribes wherein the matter in controversy arises under the Constitution, laws, or treaties of the United States. Here, plaintiffs assert claims arising under the Constitution and laws of the United States, particularly the Indian Commerce Clause of Article I, Section 8, Clause 3 of the United States Constitution. In support of his motion, defendant contends the court has no jurisdiction to hear this matter because plaintiffs' suit is barred by the Eleventh Amendment to the United States Constitution. Specifically, defendant argues that the Eleventh Amendment bars application of the Indian Commerce Clause to the state of Kansas.

 The defendant is correct in that the Eleventh Amendment restricts suits in federal court by private parties "seeking to impose a liability which must be paid from public funds in the state treasury." *Quern v. Jordan,* 440 U.S. 332, 337, 99 S.Ct. 1139, 1143, 59 L.Ed.2d 358 (1979) (citing *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662, (1974)). *See Kennecott Copper Corp. v. State Tax Comm'n,* 327 U.S. 573, 66 S.Ct. 745, 90 L.Ed. 862 (1946). However, injunctive relief may be obtained against a state so long as the action is against a state official allegedly acting in violation of federal law. *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908); *see Quern,* 440 U.S. at 337, 99 S.Ct. at 1143 ("a federal court, consistent with the Eleventh Amendment, may enjoin state officials to conform their future conduct to the requirements of federal law, even though such an injunction may have an ancillary effect on the state treasury."). "The distinction between that relief permissible under the doctrine of *Ex parte Young* and that found barred in *Edelman* was the difference between prospective relief on one hand and retrospective relief on the

other." *Quern,* 440 U.S. at 337, 99 S.Ct. at 1143.

■ This case appears to fall within the exception created under *Ex parte Young.* Plaintiffs are not seeking damages from the state of Kansas. They are instead requesting the court to enjoin the Kansas Director of Revenue to conform his future conduct to the requirements of federal law. This is the type of "prospective relief" contemplated by the Supreme Court as consistent with the Eleventh Amendment. Any ancillary effect the lawsuit may have on the Kansas treasury is irrelevant. *See Quern,* 440 U.S. at 337, 99 S.Ct. at 1143.

This conclusion is also consistent with the long line of Indian tax cases. The Supreme Court has adjudicated suits by Indian tribes and others challenging state taxation of tribal activities at least since *Worcester v. Georgia,* 6 Pet. 515, 8 L.Ed. 483 (1832). *See, e.g., Oklahoma Tax Com'n v. Citizen Band Potawatomi Indian Tribe of Oklahoma,* 498 U.S. 505, 111 S.Ct. 905, 112 L.Ed.2d 1112 (1991); *Oklahoma Tax Com'n v. Sac and Fox Nation,* 508 U.S. 114, 113 S.Ct. 1985, 124 L.Ed.2d 30 (1993); *Department of Taxation and Finance of New York v. Milhelm Attea & Bros., Inc.,* 512 U.S. 61, 114 S.Ct. 2028, 129 L.Ed.2d 52 (1994). The Supreme Court recently addressed a similar issue in *Oklahoma Tax Com'n v. Chickasaw Nation,* 515 U.S. 450, 115 S.Ct. 2214, 132 L.Ed.2d 400 (1995), and proscribed application of a state fuel tax comparable to the Kansas fuel tax at issue in the present action. The *Chickasaw* Court gave no indication that the Eleventh Amendment would pose any sort of restraint on the power of the federal courts to hear such a case. Indeed, in none of the numerous Indian tax cases reviewed by this court has the Supreme Court or any other federal court indicated that the Eleventh Amendment presents any limitation that would prevent the court from hearing the instant lawsuit.

Defendant contends that the recent Supreme Court ruling in *Seminole Tribe of Florida v. Florida,* 517 U.S. 609, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) compels a different conclusion. The court disagrees. The issue in *Seminole* turned on the ability of Congress to abrogate state sovereign immunity by authorizing Indian tribes to sue states to enforce tribal statutory rights under the detailed provisions of the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. § 2710 *et seq. Id.* The Court concluded that Congress had no such power under the Indian Commerce Clause and therefore the IGRA could not grant jurisdiction over a state that does not consent to be sued. *Id.*

The *Seminole* case did not involve, however, a situation analogous to the present case in which a state attempts to impose a tax on an Indian tribe allegedly in violation of federal law. *Id.* Nor did it involve a suit for prospective injunctive relief in order to end an alleged continuing federal-law violation. *Id.* Whether Congress has the power under the Indian Commerce Clause to enact a statute that abrogates a state's Eleventh Amendment immunity is an entirely different question than whether the Indian Commerce Clause and federal case law, absent any intervention by Congress, prohibit a state from asserting a tax on an Indian nation. It is the latter question which the *Seminole* Court had no occasion to address, and which the Supreme Court already answered in its long line of Indian tax cases. *Id.*

The court also disagrees with defendant that the *Seminole* decision somehow diluted the *Ex parte Young* doctrine as it applies to the present case. The *Seminole* Court expressly distinguished the situation in that case from that giving rise to the traditional *Ex parte Young* action. *Id.* at ——, 116 S.Ct. at 1131–33. In the *Seminole* case, the "continuing violation of federal law" alleged by the petitioner was the Governor's failure to bring the state into compliance with Section 2710(d)(3) of the IGRA. *Id.* at ——, 116 S.Ct. at 1132. The *Seminole* Court noted that "Congress passed § 2710(d)(3) in conjunction with the carefully crafted and intricate remedial scheme set forth in § 2710(d)(7)," and found that "where Congress has prescribed a detailed remedial scheme for the enforcement against a State of a statutorily created right, a court should hesitate before casting aside those limitations and permitting an action against a state officer based upon *Ex parte Young.*" *Id.* In cases where Congress has not enacted a remedial scheme specifically designed for the enforcement of a particular right, "[a]n indi-

vidual may obtain injunctive relief under *Ex parte Young* in order to remedy a state officer's ongoing violation of federal law." *Id.* at —— n. 16, 116 S.Ct. at 1132 n. 16.

**IT IS THEREFORE BY THE COURT ORDERED** that defendant's Motion to Dismiss (Doc. 55) is denied.