Dale GRIESS, Plaintiff,

v.

The STATE OF COLORADO, the Colorado Department of Corrections, Chase Riveland, Mark McGoff, James Brittain, James G. Ricketts, Gene Tollis, Edward Buckingham, John Perko, and Lena Dice, Defendants.

Civ. A. No. 84-K-1314.

United States District Court,
D. Colorado.

Dec. 26, 1985.

James D. Evans, Aurora, Colo., for plaintiff.

Gordon L. Vaughan, Colorado Springs, Colo., John Daniel Dailey, Asst. Atty. Gen., Denver, Colo., for defendants.

ORDER OF DISMISSAL

KANE, District Judge.

Plaintiff, Dale Griess, is a former inmate of the Colorado Department of Corrections. The defendants, in addition to the State of

Colorado and its department of corrections, are Chase Riveland, current director of the department of corrections; James G. Ricketts, director of the department of corrections during the periods of the plaintiff's incarceration; Mark McGoff, superintendent of the Fremont Correctional Facility in Canon City, Colorado; James Brittain, superintendent of the Territorial Correctional Facility in Canon City, Colorado; Gene Tollis, director of offender records for the department of corrections; Edward Buckingham, director of offender services for the department of corrections; John Perko, executive director of the department of corrections and Lena Dice, administrative officer of the Canon Correctional Facility for the department of corrections. The individual defendants are, or were at all pertinent times, employees of the State of Colorado.

This action is brought under 42 U.S.C. §§ 1981 and 1983.[1] Plaintiff claims that defendants deprived him of equal protection and due process rights, secured by the Fifth and Fourteenth Amendments to the Constitution of the United States. Plaintiff also appends two state law claims: 1) false imprisonment and 2) failure to discharge statutory obligations. All three of plaintiff's claims for relief arise from the defendant's alleged failure to take into account pre-sentence time served in computing "good time" in accordance with Colo. Rev.Stat. § 17–22.5–101 (1973).[2] Jurisdiction is exercised under 28 U.S.C. §§ 1331 and 1343. Venue is proper pursuant to 28 U.S.C. §§ 1391 and 1392.

This matter is now before me on plaintiff's motion for summary judgment. Plaintiff asserts that he was unlawfully detained for a period of five and one half months by virtue of the retroactive application of *People v. Chavez*, 659 P.2d 1381 (Colo.1983). Defendants, asserting immunity as a defense, have moved for dismissal or, in the alternative, summary judgment. Since defendants have submitted affidavits in support of their motion, I treat their motion as one for summary judgment pursuant to Fed.R.Civ.P. 56(c). For the reasons set forth below, plaintiff's motion for partial summary judgment is denied. Defendants' motion for summary judgment is granted.

FACTUAL BACKGROUND

Plaintiff was arrested on August 18, 1980. He was incarcerated in Adams County Jail from that time until his sentencing on February 10, 1981; a period of 177 days. On February 10, 1981 plaintiff was sentenced to three years imprisonment followed by one year of parole. At the time of the sentencing, plaintiff was credited with 177 days of presentence incarceration. He was also awarded one year, three months and one day good time, and 15 days earned time.[3] Plaintiff eventually served one year, two months and 16 days in the

---

1. 42 U.S.C. § 1983 provides in part:

    Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

2. Colo.Rev.Stat. § 17–22.5–101 (now superseded by Colo.Rev.Stat. § 17–22.5–301 (1985 Supp.) provided:

    *Good time.* Each person sentenced for a crime committed on or after July 1, 1979, whose conduct indicates that he has substantially observed all of the rules and regulations of the institution or facility in which he has been confined and has faithfully performed the duties assigned to him shall be entitled to a good time deduction of fifteen days a month from his sentence. The good time authorized by this section shall vest quarterly and may not be withdrawn once it has vested. No more than 45 days of good time may be withheld by the department in any one quarter....

3. Earned time per Colo.Rev.Stat. § 17–22.5–102 (now superseded by Colo.Rev.Stat. § 17–22.5–302 (1985 Supp.)) is awarded to an inmate upon his showing of "substantial and consistent progress" toward his rehabilitation. It is distinct from good time in that its award is not presumed and requires conduct above and beyond the conduct required to avoid the withdrawal of good time credits.

custody of the Colorado department of corrections.

Plaintiff was released on April 26, 1982 to serve a one year term of parole. On January 25, 1983, plaintiff was re-incarcerated as a parole violator. He was released from that incarceration on March 31, 1983.

On February 22, 1983 the Colorado Supreme Court decided *People v. Chavez*, 659 P.2d 1381 (Colo.1983). Rehearing was denied on March 28, 1983. *Chavez* held that presentence time served must be included in the computation of good time pursuant to Colo.Rev.Stat. § 17–22.5–101 (1973). That is, a prisoner must be given good time credits, potentially reducing time served by as much as half, for his pre-sentence as well as post sentence time served. Prior to *Chavez*, as illustrated by the defendants' treatment of plaintiff's good time, pre-sentence time served was deducted from the sentence but not subjected to good time reduction.

Had plaintiff been given the maximum good time credit for the pre-sentence time served in county jail, his mandatory release date would have been January 28, 1982. Had plaintiff been released on January 28, 1982, his one year parole would have expired, and he would have had to have been released on January 28, 1983.[4]

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendants assert in their motion for summary judgment that the state, its department of corrections and the individual defendants are absolutely immune from this suit. Defendants also argue, in the alternative, that the individual named defendants are immune by virtue of the doctrine of qualified good faith immunity.

The Eleventh Amendment of the United States Constitution provides:

The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state.

In *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890), the Supreme Court held that the Eleventh Amendment precludes suit against an unconsenting state even brought by a citizen of that state.

### A. State Immunity

A state's Eleventh Amendment immunity to suit is, however, not absolute. A state may be sued if it has either consented to suit or Congress has abrogated its sovereign immunity.

#### 1. Consent

■ The Supreme Court has unequivocally held that:

There can be no doubt ... that suit against the state and its Board of Corrections is barred by the Eleventh Amendment, unless Alabama has consented to the filing of such suit.

*Alabama v. Pugh*, 438 U.S. 781, 782, 98 S.Ct. 3057, 3057, 57 L.Ed.2d 1114, 1116 (1978).

However, a state's waiver of its Eleventh Amendment immunity is not easily inferred:

Constructive consent is not a doctrine commonly associated with the surrender of constitutional rights, and we see no place for it here. In deciding whether a State has waived its constitutional protection under the Eleventh Amendment, we will find waiver only where stated "by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction" (citation omitted).

*Edelman v. Jordan*, 415 U.S. 651, 652, 673, 94 S.Ct. 1347, 1360, 39 L.Ed.2d 662, 678 (1974).

Plaintiff asserts that the state, through the enactment of Colo.Rev.Stat. §§ 24–10–

---

4. The parties correctly stipulated to January 28, 1983 as being plaintiff's latest discharge date had his good time been properly calculated.

Upon reincarceration for parole violation a prisoner may not be detained past the expiration date of his parole.

104 and 106 (1973),[5] waived whatever rights to immunity it may have in this case. Section 106(b) provides for the waiver of immunity to suit in those cases arising out of the operation of any correctional facility or jail. Section 104 provides that if a public entity has provided insurance coverage for any act or omission by an employee, then such public entity shall be deemed to have waived any sovereign immunity defense which may arise. The proper construction of these statutory provisions is that the state waives immunity against suit only in its own courts. With reference to these provisions I have held that

> ... a state's waiver of its immunity against suit in its own courts does not constitute waiver of its eleventh amendment immunity against suit in federal court. *Edelman v. Jordan*, (citation omitted)

*Verner v. Colorado*, 533 F.Supp. 1109, 1114 (D.Colo.1982), *aff'd* 716 F.2d 1352 (10th Cir.1983), *cert. denied*, 466 U.S. 960, 104 S.Ct. 2175, 80 L.Ed.2d 558 (1984). The state has not waived its Eleventh Amendment immunity.

### 2. Abrogation

■ Plaintiff contends that 42 U.S.C. § 1983, under which this case is brought, constitutes congressional abrogation of a state's Eleventh Amendment immunity. This contention is erroneous. For § 1983 to constitute congressional abrogation, I must find that Congress intended a state to be a "person" for purposes of that statute. I cannot do this. While in the past, I've expressed my belief that the Supreme Court's denial that a state is a "person"

under § 1983 in *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979) and *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), was merely dicta, *Friedman v. Weiner*, 515 F.Supp. 563, 566 (D.Colo.1981), the 10th Circuit has concluded otherwise. I am bound to hold that a state is not a "person" for purposes of § 1983 and that, therefore, § 1983 does not constitute congressional abrogation of a state's Eleventh Amendment immunity. *Garcia v. Board of Education of the Socorro Consolidated School District*, 777 F.2d 1403, 1413–14 (10th Cir.1985). *See also, Quern v. Jordan*, 440 U.S. 332, 440, 99 S.Ct. 1139, 59 L.Ed.2d 358, 367 ("But unlike our Brother Brennan, we simply are unwilling to believe ... that Congress intended by the general language of § 1983 to override the traditional sovereign immunity of the States").

The State of Colorado and its department of corrections are immune from this suit under the protections afforded by the Eleventh Amendment.

### B. Individual Defendants' Immunity

■ Defendants' claim that the individual defendants are immune from liability on two grounds: (1) derivative Eleventh Amendment immunity, and (2) good faith immunity. For the reasons set forth below, I hold that the individually named defendants have absolute derivative Eleventh Amendment immunity. Thus, I need not address their claim of qualified good faith immunity.

In *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed.2d 714 (1908), the Su-

---

5. Colo.Rev.Stat. § 24–10–104 provides in part: (1) Notwithstanding any provision of law or of this article to the contrary, if a public entity provides insurance coverage provided by an insurance company authorized to do business in this state to insure itself against liability for any injury resulting from an act or omission by such employee acting within the scope of his employment, then such public entity shall be deemed to have waived the defense of sovereign immunity in any action for damages for any injury insured against....
Colo.Rev.Stat. § 24–10–106 provides in part:

(1) A public entity shall be immune from liability in all claims for injury which are actionable in tort except as provided otherwise in this section. Sovereign immunity, whether previously available as a defense or not, shall not be asserted by a public entity as a defense in an action for damages for injuries resulting from:

. . . . .

(b) The operation of any public hospital, correctional facility, as defined in § 17–1–102, C.R.S. 1973, or jail by such public entity or a dangerous condition existing therein....

preme Court held that the Eleventh Amendment was no bar to a federal court action seeking to enjoin the Attorney General of Minnesota from enforcing a statute claimed to violate the Fourteenth Amendment of the federal constitution. The court reasoned that since the action was against an official, and not the state itself, it was outside the ambit of the Eleventh Amendment. In *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662, however, the court limited the *Ex Parte Young* holding to suits for prospective relief only. The court distinguished prospective from retroactive relief on the ground that a retroactive award, as is presently sought, is "in essence one for the recovery of money from the state" and that, therefore, "the state is the real substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants". 415 U.S. at 663, 94 S.Ct. at 1355, 39 L.Ed.2d at 672–73, *citing Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945).

The court in *Ford Motor Co.* held that "the nature of a suit as one against the state (as opposed to one against the individually named defendant) is to be determined by the essential nature and effect of the proceeding". 323 U.S. at 464, 65 S.Ct. at 350, 89 L.Ed. at 394 (paranthetical phrase added). In the present case there is no doubt that if plaintiff were to prevail his award would come from the coffers of the state and not the pockets of the individually named defendants. Colo.Rev.Stat. § 24–10–110 provides in pertinent part that:

(1) A public entity shall be liable for: ...
(b)(I) The payment of all judgments and settlements of claims against any of its public employees where the claim against the public employee arises out of injuries sustained from an act or ommission of such employee occurring during the performance of his duties and within the scope of his employment, except where such act or omission is willful and wanton or, in the case of public entities other than the state of Colorado, where the defense of sovereign immunity is available to the public entity, and provided that the employee does not compromise or settle the claim without the consent of the public entity.

Because of this indemnification provision, the suit is "in essence one for the recovery of money against the state". The individually named defendants, then, may partake of the state's Eleventh Amendment immunity.

While § 1983 specifically authorizes suits against persons, the Supreme Court has held that:

[t]hough a § 1983 suit may be instituted ... a federal court's remedial power, consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief, *Ex Parte Young* ... and may not include a retroactive award which requires the payment of funds from the state treasury, *Ford Motor Co. v. Department of the Treasury* (citations omitted).

*Edelman v. Jordan*, 415 U.S. at 677, 94 S.Ct. at 1362, 39 L.Ed.2d at 680–81. As such, the Eleventh Amendment, while not precluding this suit against the individual defendants, does operate to bar the money damages remedy sought by plaintiff.

Accordingly, defendants' motion for summary judgment is granted. All of the defendants are immune from suit in this court. Plaintiff's claims, therefore, are dismissed without prejudice.

### C. Other Claims

Since I have granted the defendant's summary judgment on their Eleventh Amendment immunity claim, I need not address their claims for dismissal on other grounds.[6]

---

6. In addition to their successful Eleventh Amendment immunity defense, defendants claim that 1) defendants Brittain and McGoff are not responsible for good time computation, 2) defendant Riveland was not a Department of Corrections official at the relevant time and 3) all individual defendants are entitled to qualified immunity under *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982),

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### A. Equal Protection

Plaintiff moves for an order that, as a matter of law, he was unlawfully detained by virtue of the retroactive application of *People v. Chavez*, 659 P.2d 1381 (Colo. 1983). Plaintiff argues that defendants' failure to include pre-sentence time served in their good time calculations, as required by the retroactive application of *Chavez*, deprived him of due process and equal protection of the laws. The Colorado Supreme Court, though construing Colo.Rev.Stat. § 17–22.5–101 (1973) to require that good time be applied to pre-sentence detention, declined to hold that the deprivation of pre-sentence good time credit is violative of the equal protection component of the Fourteenth Amendment's due process clause. *People v. Turman*, 659 P.2d 1368 (Colo.1983). In any event, I would not be bound by a state court's interpretation or application of the federal constitution.

Plaintiff contends that he has

"asserted facts to support a finding of disparate treatment of the indigent class of prisoners resulting in confinement for a longer period of time simply because of their indigency. This disparate treatment results from a denial of good time to a person who, because of his indigency, has effectively been forced to serve part of his sentence in a county jail where he was not given good time credit. This is a denial of equal protection."

Plaintiff's Reply Brief No. 1, p. 2.

I must decide whether, under the facts presented, a denial of good time credit for pre-sentence incarceration violates the prisoner's equal protection rights. The standard by which the states conduct is adjudged to be violative of equal protection is either strict scrutiny or rational basis. When a suspect classification or a fundamental constitutional right is involved, the strict judicial standard is applied. To uphold the classification under that standard there must be a necessary relationship between the classification and a compelling state interest. If the classification does not distinguish a suspect class for disparate treatment, nor involve a fundamental constitutional right, the rational basis test is applied. To uphold the classification under that standard, there must be a reasonable nexus between the classification and a legitimate state interest.

### 1. Strict Scrutiny

In *San Antonio Independent School District v. Rodriguez*, 411 U.S. 1, 20, 93 S.Ct. 1278, 1289, 36 L.Ed.2d 16, 35 (1973), the Supreme Court stated the test for determining when a wealth based classification impermissibly discriminates against a suspect class:

The individuals, or groups of individuals, who constituted the class discriminated against in our prior cases shared two distinguishing characteristics: because of their impecunity they were completely unable to pay for some desired benefit, and as a consequence, they sustained an absolute deprivation of a meaningful opportunity to enjoy that benefit.

*Williams v. Illinois*, 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970), is a leading "prior case" which informed the *Rodriguez* Court in formulating the above quoted test. In that case the state sought to confine the defendant for longer than the statutory maximum to make him "work off" the fine that the sentencing judge had imposed along with the maximum sentence. The court found this to be unconstitutional, concluding that

when the aggregate imprisonment exceeds the maximum period fixed by the statute and results directly from an involuntary nonpayment of a fine or court costs we are confronted with an impermissible discrimination that rests on ability to pay.

399 U.S. at 240–41, 90 S.Ct. at 2020–22, 26 L.Ed.2d at 592–93. The court reasoned that

so that summary judgment in their favor is appropriate.

[s]ince only a convicted person with access to funds can avoid the increased imprisonment, the Illinois statute in operative effect exposes only indigents to the risk of imprisonment beyond the statutory maximum. By making the maximum confinement contingent upon one's ability to pay, the State has visited different consequences on two categories of persons since the result is to make incarceration in excess of the statutory maximum applicable only to those without the requisite resources to satisfy the money portion of the judgment.

399 U.S. at 242, 90 S.Ct. at 2023, 26 L.Ed.2d at 593–94 (footnotes omitted). *See also, Tate v. Short*, 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971), wherein the court extended *Williams* to bar imprisonment of an indigent defendant who was unable to pay the fine for an offense that was punishable only by fine.

The facts here differ from those in *Williams* and *Tate* because plaintiff was not confined in the first instance or for a period in a manner proscribed by statute. The consequences, however, are the same: As an indigent, plaintiff was forced to serve more time than a non-indigent solely because of his poverty.

Applying the *Rodriguez* test, I find that the plaintiff belongs to a class that is "completely unable to pay for some benefit", here the benefit of being free on bail pending trial. The plaintiff consequently "sustain[ed] an absolute deprivation of a meaningful opportunity to enjoy that benefit." The defendants' conduct, then, is to be appraised with strict scrutiny.

I hold that the wealth based discrimination visited upon plaintiff involves a suspect classification pursuant to the test set forth in *Rodriguez*. As such, the state may only justify its conduct upon a showing that it was necessary to effectuate a compelling state interest. As a matter of law, this showing can not be made.[7]

**7.** Numerous other courts have rendered decisions in accord with my order today. *See, e.g., People v. Sage,* 26 Cal.3d 498, 611 P.2d 874, 165 Cal.Rptr. 280 (1980); *Hampton v. Rowe,* 88 Ill.

### 2. *Rational Basis*

Even if the discrimination at issue does not involve a suspect classification so as to invoke strict scrutiny, the state's conduct fails even the rational basis standard of review. I find no reasonable nexus between the denial of good time credit for pre-sentence confinement and any state interest.

In *McGinnis v. Royster*, 410 U.S. 263, 93 S.Ct. 1055, 35 L.Ed.2d 282 (1973), the Supreme Court rejected an equal protection challenge to denial of good time credits under the rational basis standard. *McGinnis*, however, is distinguished from the present case and is, therefore, not controlling. *See People v. Turman*, 659 P.2d 1368 (Quinn and Neighbors, JJ., separately dissenting). In *McGinnis*, the court found that the denial of good time credits for pre-sentence incarceration was rationally related to a legitimate state interest. The Court justified the disparate treatment in noting that

[T]he granting of good time credit toward parole eligibility takes into account a prisoner's rehabilitative performance ... As the statute and regulations contemplate state evaluation of an inmate's progress towards rehabilitation, in awarding good time, it is reasonable not to award such time for pre-trial detention in a county jail where no systematic rehabilitative programs exist and where the prisoner's conduct and performance are not even observed and evaluated by the responsible state prison officials ... Where there is no evaluation by state officials and little or no rehabilitative participation for anyone to evaluate, there is a rational justification for declining to give good time credit.

410 U.S. 271, 272, 93 S.Ct. at 1060, 1061, 35 L.Ed.2d 289, 290.

In the present case, however, Colorado good time is not related to rehabilitation

App.3d 352, 43 Ill.Dec. 511, 410 N.E.2d 511 (1980); *State ex rel. James v. Stamps,* 562 S.W.2d 354 (Mo.1978).

nor willing participation in rehabilitative programs. As noted in *People v. Turman,* 659 P.2d 1368, 1378–79,

> ... Colorado inmates are presumed eligible for good time credits. Good time credits are awarded to the inmate at the moment of sentencing. Good time credits are awarded prior to any exemplary conduct by an inmate and are, therefore, unrelated to rehabilitation efforts. Good time credits are withdrawn from an inmate only in the event there is a violation of the rules and regulations of the institution where he or she is confined. Good time credits are not awarded for positive behavior but are withdrawn for negative conduct ...

(Neighbors, J., dissenting).

The sole state interest in the good time scheme, as applied to defendant, is to induce good behavior. Not allowing good-time credit for pre-sentence incarceration, but doing so for prison confinement, is not even rationally related to the states' end of good prisoner behavior. I hold that plaintiff's being denied good time credit for his presentence incarceration violates equal protection under both the rational basis and strict scrutiny standards of review.

### B. Disposition Of This Case

■ It is plaintiff's burden to prove that he was unconstitutionally detained. *See Godbold v. Wilson,* 518 F.Supp. 1265 (D.Colo.1981). In order successfully to carry this burden, plaintiff must show that his pre-trial confinement was a result of his indigency. If he failed to post bond for want of inclination, defendants' conduct was not wealth based discrimination and plaintiff's equal protection claim will not lie.

Plaintiff concedes that "[t]he issue of plaintiff's indigency is a fact which would have to be proven at trial." Plaintiff's reply brief No. 1, p. 2. Since plaintiff's indigency is a question of material fact, plaintiff's motion for summary judgment is denied.

It is therefore ordered that

(1) Plaintiff's motion for summary judgment is denied;

(2) Defendants' motion for summary judgment is granted;

(3) Plaintiff's claims for relief are dismissed without prejudice.