841 F.2d 1042
 Dale GRIESS, Plaintiff-Appellant and Cross-Appellee,
v.
The STATE OF COLORADO; The Colorado Department of
Corrections; Chase Riveland, as Director of the Colorado
Department of Corrections; Mark McGoff, as Superintendent
of Fremont Correctional Facility; James Brittain,
Superintendent of the Territorial Correctional Facility;
James G. Ricketts, as the former director of the Colorado
Department of Corrections; Gene Tollis; Edward Buckingham;
John Perko; and Lena Dice, Defendants-Appellees and Cross-
Appellants.
 Nos. 86-1123, 86-1174.
 United States Court of Appeals,
Tenth Circuit.
 March 15, 1988.
 
 James D. Evans, Denver, Colo., for plaintiff-appellant and cross-appellee.
 Alan Epstein, Hall and Evans, Denver, Colo., and Marleen Langfield, Office of the Atty. Gen., Denver, Colo., for defendants-appellees and cross-appellants.
 Before LOGAN, SEYMOUR, and ANDERSON, Circuit Judges.
 PER CURIAM.
 
 
 1
 After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of these appeals. See Fed.R.App.P. 34(a); 10th Cir. R. 34.1.8(c) and 27.1.2. The causes are therefore ordered submitted without oral argument.
 
 
 2
 This matter is before the court on appeal and cross appeal from an order of the United States District Court for the District of Colorado dismissing a prisoner civil rights action asserting claims under 42 U.S.C. Secs. 1981 and 1983, as well as two pendent state law claims. See Griess v. Colorado, 624 F.Supp. 450 (D.Colo.1985). Plaintiff appeals from the district court's decision to grant defendants' motion for summary judgment on absolute immunity grounds; defendants seek review of the court's underlying determination that a constitutional violation had been established.
 
 
 3
 The factual background of this case is recited in sufficient detail in the district court's opinion, id. at 451-52, and need only be summarized here. Plaintiff, an inmate of the Colorado Department of Corrections in 1981-1983, alleges that defendants deprived him of his equal protection and due process rights under the Fifth and Fourteenth Amendments by failing to include the time he served prior to sentencing in the computation of "good time" under Colo.Rev.Stat. Sec. 17-22.5-101 (1973) (1980 Supp.) (superseded by Colo.Rev.Stat. Sec. 17-22.5-101 (1986 Supp.)). The inclusion of presentence confinement in the calculation of good time under the statute was established in People v. Chavez, 659 P.2d 1381, 1383-84 (Colo.1983), which controls in plaintiff's case by virtue of the Colorado Supreme Court's express direction for retroactive application of its decision. Id. at 1384. The parties have stipulated that, had plaintiff's good time been properly determined in accordance with Chavez, plaintiff's latest discharge date would have been January 28, 1983, more than two months prior to his actual release on March 31, 1983. See Griess, 624 F.Supp. at 452 & n. 4. Plaintiff seeks damages incurred as a result of his excessive and illegal incarceration.
 
 
 4
 State Defendants' Eleventh Amendment Immunity
 
 
 5
 The district court held the defendant State of Colorado and its department of corrections immune from liability under the Eleventh Amendment. See generally Meade v. Grubbs, 841 F.2d 1512, 1525, (10th Cir. 1988) (the immunity conferred by the Eleventh Amendment extends to the state and its instrumentalities). Plaintiff attempts to avoid the otherwise undeniable application of such immunity by arguing that Colorado has consented to suit in the present context. See Alabama v. Pugh, 438 U.S. 781, 782, 98 S.Ct. 3057, 3057-58, 57 L.Ed.2d 1114 (1978) (a federal suit against the state and its board of corrections is barred by the Eleventh Amendment, unless the state has consented to the filing of such a suit). Specifically, plaintiff contends that the Colorado Governmental Immunity Act (GIA), Colo.Rev.Stat. Sec. 24-10-101, et seq., which waives the state statutory defense of sovereign immunity in certain circumstances, manifests the state's assent to the maintenance of the present suit.
 
 
 6
 As the district court correctly pointed out, a state's waiver of sovereign immunity in its own courts does not constitute abandonment of its Eleventh Amendment immunity in the federal courts. See Edelman v. Jordan, 415 U.S. 651, 677 n. 19, 94 S.Ct. 1347, 1363 n. 19, 39 L.Ed.2d 662 (1974). Indeed, even a general waiver of sovereign immunity, apparently indeterminate in its scope or locus of effect, would be insufficient in this respect. See Atascadero State Hospital v. Scanlon, 473 U.S. 234, 241, 105 S.Ct. 3142, 3147, 87 L.Ed.2d 171 (1985). The Supreme Court has thus imposed a very stringent test for determining the relinquishment of Eleventh Amendment protection: "[I]n order for a state statute or constitutional provision to constitute a waiver of Eleventh Amendment immunity, it must specify the State's intention to subject itself to suit in federal court.... In the absence of an unequivocal waiver specifically applicable to federal-court jurisdiction, we decline to find that [the State] has waived its constitutional immunity." Id. at 241, 105 S.Ct. at 3147 (emphasis in original).
 
 
 7
 Applying the above principles to the present case, we agree with the district court's conclusion that the GIA, particularly Colo.Rev.Stat. Secs. 24-10-104 and 106, does not effect a waiver of the state's constitutional immunity to suit in federal court. Nothing in the GIA indicates "by the most express language or by such overwhelming implication from the text," Atascadero, 473 U.S. at 239-40, 105 S.Ct. at 3146, that the legislature was concerned with anything other than the tort liability of the state enforceable in its own courts. See, e.g., Colo.Rev.Stat. Secs. 24-10-103(2), 105, 106(1). A provision recently added to the GIA to explain its effect on claims asserted under federal law is certainly germane, though not controlling, and it clearly bears out this construction of the legislature's intent: "The provisions of this article shall apply to any action against a public entity or a public employee in any court of this state having jurisdiction over any claim brought pursuant to any federal law, if such action lies in tort or could lie in tort...." Colo.Rev.Stat. Sec. 24-10-119 (emphasis added). Accordingly, we affirm the district court's dismissal of plaintiff's claims against the state and its department of corrections on Eleventh Amendment immunity grounds.
 
 
 8
 Individual Defendants' Eleventh Amendment Immunity
 
 
 9
 While we agree with the district court regarding the state defendants' immunity from suit under the Eleventh Amendment, we decline to take the next step and apply that same immunity, derivatively, to the individually named defendants. The Supreme Court has recognized two distinct situations in which an action nominally against public officials is, in essence, an action against a governmental entity and should be treated as such for purposes of immunity analysis. The present case falls in neither of these two categories.
 
 
 10
 First, it is by now well settled that a judgment against a public servant in his official capacity imposes liability not on the particular servant in office, but on the governmental entity the office represents. See, e.g., Kentucky v. Graham, 473 U.S. 159, 165-66, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985); Brandon v. Holt, 469 U.S. 464, 471-73, 105 S.Ct. 873, 878, 83 L.Ed.2d 878 (1985); Meade v. Grubbs, 841 F.2d at 1529. Consequently, "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." Graham, 473 U.S. at 166, 105 S.Ct. at 3105 (citing Brandon, 469 U.S. at 471-72, 105 S.Ct. at 878). This principle cannot be invoked here, however, as plaintiff amended the complaint specifically to clarify his intention to sue the individual defendants in their personal capacities.
 
 
 11
 In Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), the Supreme Court acknowledged another special class of cases, those in which an unnamed governmental entity is deemed to be the true defendant despite the designation of its officials as defendants in their personal capacities. The distinctive feature of this second category of cases is summarized in the following excerpt from Edelman:
 
 
 12
 It is also well established that even though a State is not named a party to the action, the suit may nonetheless be barred by the Eleventh Amendment. In Ford Motor Co. v. Department of Treasury, 323 U.S. 459 [65 S.Ct. 347, 89 L.Ed. 389] (1945), the Court said:
 
 
 13
 '[W]hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants.' Id., at 464 [65 S.Ct. at 350].
 
 
 14
 Thus the rule has evolved that a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment. Great Northern Life Insurance Co. v. Read, [322 U.S. 47, 64 S.Ct. 873, 88 L.Ed. 1121 (1944) ]; Kennecott Copper Corp. v. State Tax Comm'n, 327 U.S. 573 [66 S.Ct. 745, 90 L.Ed. 862] (1946).
 
 
 15
 Id. at 663, 94 S.Ct. at 1355-56.
 
 
 16
 The district court held Edelman applicable to the present case by reasoning that, under an indemnification provision included in the GIA, Colo.Rev.Stat. Sec. 24-10-110(1)(b)(I), the state would be obligated to reimburse the individual defendants for any recovery by plaintiff. Thus, the district court concluded, plaintiff's suit for compensatory damages is "in essence one for the recovery of money against the state," and, as such, prohibited by Edelman. Griess, 624 F.Supp. at 454. We disagree.
 
 
 17
 We need not decide whether the indemnification provision included in the GIA in fact applies to personal capacity actions brought against state officials in federal court, as the statute could not, in any event, be invoked as a basis for cloaking individual officers with the state's absolute immunity under the Eleventh Amendment. Several other circuits have already soundly rejected similar attempts to create a derivative constitutional immunity predicated upon the cited language from Edelman and a state indemnification obligation. See, e.g., Duckworth v. Franzen, 780 F.2d 645, 650-51 (7th Cir.1985), cert. denied, --- U.S. ----, 107 S.Ct. 71, 93 L.Ed.2d 28 (1986); Spruytte v. Walters, 753 F.2d 498, 511-14 (6th Cir.1985), cert. denied, 474 U.S. 1054, 106 S.Ct. 788, 88 L.Ed.2d 767 (1986); Demery v. Kupperman, 735 F.2d 1139, 1146-51 (9th Cir.1984), cert. denied, 469 U.S. 1127, 105 S.Ct. 810, 83 L.Ed.2d 803 (1985); Downing v. Williams, 624 F.2d 612, 626 (5th Cir.1980),vacated on other grounds, 645 F.2d 1226 (1981); cf. Foster v. Day & Zimmermann, Inc., 502 F.2d 867, 875 (8th Cir.1974) (sovereign immunity of the federal government is not extended to private parties by a contractual indemnification obligation). We find the reasoning advanced by our sister circuits persuasive.
 
 
 18
 Edelman was concerned with claims for retroactive relief that by their nature must be paid from public funds, not actions directed against individuals that may ultimately be satisfied with state monies solely because the state has chosen to provide indemnification. Duckworth, 780 F.2d at 650-51; Wilson v. Beebe, 770 F.2d 578, 588 (6th Cir.1985); Demery, 735 F.2d at 1148-49. This reading of Edelman is supported not only by the character of the particular claim asserted in that case, by which the plaintiff class sought to compel state officials to release withheld benefits from a public aid fund, but also by the entire line of cases cited by the Court in support of its decision, see Edelman, 415 U.S. at 663-66, 94 S.Ct. at 1356-57, all of which dealt with the recovery of funds, such as tax revenues, public assistance benefits and money due on state contractual obligations, that were unquestionably the property of the state. See Kennecott Copper Corp. v. State Tax Comm'n, 327 U.S. 573, 66 S.Ct. 745, 90 L.Ed. 862 (1946) (action for refund of taxes); Ford Motor Co. v. Dept. of Treasury, 323 U.S. 459, 65 S.Ct. 345, 89 L.Ed. 389 (1945) (same); Great Northern Life Ins. Co. v. Read, 322 U.S. 47, 64 S.Ct. 873, 88 L.Ed. 1121 (1944) (same); In re Ayers, 123 U.S. 443, 8 S.Ct. 164, 31 L.Ed. 216 (1887) (action to compel state's acceptance of tax receivable bonds in payment of holders' state tax obligations); Hagood v. Southern, 117 U.S. 52, 6 S.Ct. 608, 29 L.Ed. 805 (1886) (same); Rothstein v. Wyman, 467 F.2d 226 (2d Cir.1972) (action for retroactive award of public assistance benefits), cert. denied, 411 U.S. 921, 93 S.Ct. 1552, 36 L.Ed.2d 315 (1973). Subsequent applications of Edelman imposing the Eleventh Amendment as a bar are consistent with this view as well. See, e.g., Papasan v. Allain, 478 U.S. 265, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (action to declare state's breach of trust in sale of school lands and to compel state officials to provide an appropriate substitute trust income); Green v. Mansour, 474 U.S. 64, 72-73, 106 S.Ct. 423, 428, 88 L.Ed.2d 371 (1985) (action for determination that state social services director miscalculated AFDC benefits, which, when offered as res judicata on the issue in subsequent state court proceedings, "would have much the same effect as a full-fledged award of damages or restitution [against the state] by the federal court").
 
 
 19
 Thus, Edelman has not altered the established rule that the Eleventh Amendment does not bar federal suits seeking damages for violations of federal law from state officials in their personal capacities. Spruytte, 753 F.2d at 513; Demery, 735 F.2d at 1150. Without the support of Edelman, the state's position boils down to an attempt unilaterally to extend its sovereign immunity to all of its employees by the assumption of an illusory obligation for indemnification (following the state's view, the employees' resultant immunity renders this indemnification obligation meaningless the moment it is recognized). The state's constitutional immunity cannot be artificially manipulated in this fashion. See Spruytte, 753 F.2d at 512 n. 6; Demery, 735 F.2d at 1147. Furthermore, if the analysis of the district court were adopted, every state in the union could immunize its employees and thereby make federal enforcement of the civil rights laws impossible against all but local government employees. Duckworth, 780 F.2d at 651; Demery, 735 F.2d at 1147; Downing, 624 F.2d at 626. In addition to being unacceptable from a practical standpoint, such a result would violate the principle that "[c]onduct by persons acting under color of state law which is wrongful under 42 U.S.C. Sec. 1983 or Sec. 1985(3) cannot be immunized by state law." Hampton v. City of Chicago, 484 F.2d 602, 607 (7th Cir.1973), cert. denied, 415 U.S. 917, 94 S.Ct. 1413, 39 L.Ed.2d 471 (1974), quoted with approval in Martinez v. California, 444 U.S. 277, 284 n. 8, 100 S.Ct. 553, 558 n. 8, 62 L.Ed.2d 481 (1980).
 
 
 20
 Accordingly, we hold that the assumption of an indemnification obligation on the part of the state does not confer a derivative constitutional immunity upon its indemnified employees. We emphasize that it has been unnecessary for us to decide whether the GIA actually obligates Colorado to provide indemnification for personal capacity actions pursued in federal court and, thus, also whether the individual defendants would be entitled to establish and enforce such an obligation in federal court over a claim of immunity asserted by the state. See generally County of Oneida v. Oneida Indian Nation, 470 U.S. 226, 250-53, 105 S.Ct. 1245, 1260-61, 84 L.Ed.2d 169 (1985).
 
 Individual Defendants' Qualified Immunity
 
 21
 As a result of its dismissal of the entire case on Eleventh Amendment immunity grounds, the district court had no occasion to address several potentially dispositive issues, including the defense of qualified immunity raised by defendants below. See Griess, 624 F.Supp. at 454 n. 6; see generally Cleavinger v. Saxner, 474 U.S. 193, 202-06, 106 S.Ct. 496, 501-04, 88 L.Ed.2d 507 (1985) (prison discipline committee members are entitled to qualified immunity). This procedural posture does not preclude our consideration of the matter, however, as we are "free to affirm a district court decision on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court." Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 887 (2d Cir.1987); see, e.g., Taylor v. Nichols, 558 F.2d 561, 565-67 (10th Cir.1977) (affirming grant of summary judgment on alternative grounds of immunity). The Supreme Court has indicated that when the issue with which we are concerned, i.e., whether constitutional rights allegedly violated were "clearly established" for purposes of qualified immunity under Harlow v. Fitzgerald, 457 U.S. 800, 818-19, 102 S.Ct. 2727, 2738-39, 73 L.Ed.2d 396 (1982), is a "purely legal question," it is appropriate for resolution on appeal. Mitchell v. Forsyth, 472 U.S. 511, 530, 105 S.Ct. 2806, 2818, 86 L.Ed.2d 411 (1985).
 
 
 22
 In order to apply the principles of Harlow to the present case, it is necessary to identify the constitutional bases upon which plaintiff's claim for relief is grounded. Because the test for qualified immunity turns on whether a right is clearly established, courts should ordinarily determine the existence and character of the underlying constitutional violation(s) before proceeding to the immunity question. Only in this way can constitutional rights become clearly established and thereby provide preceptive guidance to those who must conform their conduct to constitutional standards. We emphasize, however, that in light of the special nature of the violations asserted herein, we do not decide whether any constitutional deprivation has, in fact, been demonstrated by plaintiff. Such a restrictive approach is appropriate here because one of the proposed constitutional rights is presently under consideration by another panel of this court, while the other is predicated upon a now superseded state statute.
 
 
 23
 As suggested immediately above, we believe two distinct constitutional principles are potentially implicated by plaintiff's allegations. First, the district court held that defendants' denial of good time credit for plaintiff's presentence confinement, when such credit would have been given one able to meet bail and thus serve all of his sentence after conviction, constituted unjustified wealth-based discrimination violative of equal protection guaranties. See Griess, 624 F.Supp. at 455-57. Second, since the statute in force during plaintiff's incarceration, Colo.Rev.Stat. Sec. 17-22.5-101 (1973) (1980 Supp.), actually did grant presentence confinees an entitlement to good time credit by virtue of the retroactive application of People v. Chavez, 659 P.2d 1381, the denial of such credit to plaintiff arguably violated his right to due process as well. See Wolff v. McDonnell, 418 U.S. 539, 557, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974); see, e.g., McFarland v. Cassady, 779 F.2d 1426, 1428 (9th Cir.1986); Jensen v. Satran, 651 F.2d 605, 606-07 (8th Cir.1981).
 
 
 24
 We believe neither of the constitutional arguments outlined above rests on rights clearly established when the presentence good time credit was withheld from plaintiff. The equal protection analysis advanced by the district court is still a matter of considerable debate, compare Griess 624 F.Supp. at 455-57 with McGinnis v. Royster, 410 U.S. 263, 268-77, 93 S.Ct. 1055, 1058-63, 35 L.Ed.2d 282 (1973); see generally People v. Turman, 659 P.2d 1368, 1372-73, 1375-81 (Colo.1983), and indeed is currently before this court in another case. With respect to the due process argument, the text of Sec. 17-22.5-101 (1973) (1980 Supp.) did not specifically state that the good time entitlement established therein was intended to apply to presentence confinement, and the statute's immediate predecessor, Colo.Rev.Stat. Sec. 17-20-107 (1973) (1978 Supp.), was understood not to create such an entitlement. See generally People v. Turman, 659 P.2d at 1371. Thus, prior to the Colorado Supreme Court's decision in Chavez, applicable to plaintiff only by virtue of the court's direction for retroactivity, plaintiff's right to presentence good time credit could not be characterized as clearly established. Therefore, we hold that the individual defendants are qualifiedly immune from plaintiff's suit for compensatory damages.
 
 
 25
 The judgment of the United States District Court for the District of Colorado is AFFIRMED.