**DEPARTMENT OF PUBLIC AFFAIRS,** a private business; **Christopher Cross,** an individual, Plaintiff,

v.

**COLORADO DEPARTMENT OF CORRECTIONS,** a state law enforcement agency; **Jeff Geist,** an individual; and **Sandi Izor,** an individual, Defendants.

No. CIV.A. 01–K–2264.

United States District Court, D. Colorado.

March 14, 2002.

Christopher Cross, Chillicothe, MO, pro se.

Friedrick C. Haines, Atty. General's Office, Tort Lit. Section, Denver, CO, for Colorado Dept. of Corrections, Jeff Geist.

Sandi Izor, Wheat Ridge, CO, pro se.

## ORDER ON MOTIONS TO DISMISS

KANE, Senior District Judge.

This *pro se* civil rights action is before me on the motions of Defendant Colorado Department of Corrections (DOC) and Defendant Izor to dismiss. Defendant Geist has raised the defense of qualified immunity in Answer to the Complaint, but has not filed a dispositive motion on that defense.

Plaintiff Christopher Cross is the sole owner of an unincorporated, sole proprietorship private investigation business called "Department of Public Affairs" ("DPA"). DPA is superfluously named a Plaintiff in this action. Because DPA does not have an existence distinct from Plaintiff Cross, it will be stricken as a separately named party.

The allegations and theories of relief in Cross's Complaint are difficult to follow. As best I can discern, Cross claims he was the subject of an unwarranted investigation by the Colorado Department of Corrections (DOC), which interfered with his "legitimate trade, occupation and practice" of providing investigatory services to incarcerated persons and deprived him of various of his constitutional rights.[1] Cross

---

1. With respect to the DOC and the individual Defendants generally, Cross seeks to vindicate his "right to be free from unreasonable searches and seizures"; his "right to be free from undue governmental intrusions upon a reasonable expectation of privacy"; his due

claims he was wrongfully and recklessly identified as an "escaped offender" by Defendants Izor and Geist and subjected to unlawful "detainment [sic] and search and seizure" based on "false information" given by Izor.[2] *Id.* at ¶¶ 15–23, 36, 40–46. When Cross demanded an investigation into the incident, Cross contends Defendants hid behind a "blue wall of silence" to avoid liability for their actions. Compl. ¶¶ 10, 11, 14. Cross asserts Geist and Izor were exonerated in a "whitewash" despite having "violated criminal codes" and having used "fraud" and "criminal impersonation" to conduct "warrantless searches and seizures on behalf of the state." *Id.* ¶ 45.

Cross maintains the DOC's conduct violates Colo.Rev.Stat. § 17–1–103.8 and has deprived him of numerous asserted rights in contravention of 42 U.S.C. § 1983. As to Defendant Geist, Cross asserts a claim under § 1983 that Geist was "deliberately indifferent" to his constitutional and statutory rights. Cross recognizes Defendant Izor is a private citizen, but maintains she was acting under color of state law when she reported him to the DOC as possibly running a scam on DOC inmates and their families such that she, too, should be liable for the constitutional and statutory deprivations asserted against the DOC. Cross seeks $300,000 in damages from each of the Defendants for emotional distress and financial losses associated with pursuing this action and trying to sustain a business venture in the face of their misconduct, as well punitive damages and other unspecified relief. The DOC and Defendant Izor move to dismiss.

"A 12(b)(6) motion should not be granted 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir.1997) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). All well-pleaded allegations in the complaint are accepted as true and viewed in the light most favorable to the plaintiff. *See id.* However, while I must accept reasonable inferences derived from well-pleaded facts, I need not accept "unwarranted inferences drawn from the facts or footless conclusions of law predicated upon them." *Bryson v. City of Edmond*, 905 F.2d 1386, 1390 (10th Cir.1990) (quotations omitted).

### The DOC's Motion to Dismiss.

■ The DOC denies the State of Colorado has waived its immunity from suit under the Eleventh Amendment of the United States Constitution or that Congress abrogated that immunity when it enacted 42 U.S.C. § 1983. I agree.

Section 1983 imposes civil liability upon any "person" who subjects another to a constitutional deprivation. 42 U.S.C. § 1983. In its Motion to Dismiss, the

---

process and equal protection rights; his right to access the courts; and his "right to pursue a recognized and legitimate trade, practice, occupation." *See* Compl., ¶ 27(a)—(f).

2. Cross asserts Izor falsely represented herself to be a "concerned Mother of a non-existent 'son' … incarcerated within the DOC" to gain access to him and conduct "warrantless searches and seizures," the nature of which are not specified. While it is not at all clear from his Complaint, it appears from his responses and other allegations in his briefs that Izor came on the scene as an investigator when Cross contacted CURE, a prisoner reform and advocacy organization in Washington, D.C., to advise CURE that he was a private investigator who could help prisoners and their families. CURE referred Cross's letter to Izor, who investigated the matter. After receiving information (presumably, from Geist) that Cross might be an "absconded parolee" and suspicious he may be running a scam, Izor contacted DOC officials who launched an investigation. It is this investigation, and the otherwise unidentified "searches and seizures" that flowed from it, that are the subject of Cross's Complaint.

DOC argues (1) that I am without jurisdiction to consider the claim because the DOC, as an "arm of the state," is immune from suit for damages under the Eleventh Amendment to the United States Constitution; and (2) that Plaintiff's allegations fail to state a claim for relief because, as an "arm of the state," the DOC is not a "person" subject to liability under § 1983. As applied in this case, these arguments merge into a single correct statement of the law.

Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for every such litigant. It is well-established that absent an unmistakable waiver by a State of its Eleventh Amendment immunity, or an unmistakable abrogation of such immunity by Congress, the Eleventh Amendment provides absolute immunity from suit in federal courts for states and their agencies. *Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 241, 243, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985); *Alabama v. Pugh,* 438 U.S. 781, 782, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978)(holding, upon consideration of § 1983 claims asserted against Alabama and Alabama's department of corrections, "[t]here can be no doubt ... that suit against the state and its Board of Corrections is barred by the Eleventh Amendment, unless Alabama has consented to the filing of such suit"). I applied this analysis in *Griess v. State of Colo.,* 624 F.Supp. 450, 453 (D.Colo.1985), concluding the State of Colorado had not enacted any law that waived its immunity from suit under § 1983. *Id.* (recognizing (1) that Congress's enactment of § 1983 did not abrogate the DOC's Eleventh Amendment immunity and (2) that Colorado's waiver of immunity from suit for certain tort actions in its own courts did not constitute a waiver of its or the DOC's Eleventh Amendment immunity against suit for constitutional torts in federal court under § 1983). The Tenth Circuit af-

firmed, 841 F.2d 1042 (10th Cir.1988), and these conclusions remain the law in this circuit.

Plaintiff's arguments regarding "clearly established rights" and the assertion that sovereign immunity "can only be granted if it is apparent that the Defendant did not have prior knowledge of existing rights," Resp. at p. 3, confuse the concept of qualified immunity afforded *individual* defendants to § 1983 claims with the absolute immunity afforded states and state agencies like the DOC under the Eleventh Amendment. *See Baptiste v. J.C. Penney Co.,* 147 F.3d 1252, 1255 (10th Cir.1998) ("Qualified immunity shields government officials performing discretionary functions from individual liability under 42 U.S.C. § 1983 unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.' ")(quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).

Plaintiff's alternative arguments that a waiver of Eleventh Amendment immunity may be implied by Colorado's enactment of (1) the DOC's Code of Penal Discipline (Resp. at p. 2); Section § 17–1–103.8 regarding the appointment and duties of inspectors general by the DOC executive director (Resp. at p. 3); or (3) the "incorporation of ... due process rights into the [DOC]'s policies" (*id.*), are similarly unavailing. There is no expressed private right of action for any individual to sue the State in any of these provisions, and Plaintiffs have failed to establish that such a private right of action should be implied. *See Allstate Insurance Co. v. Parfrey,* 830 P.2d 905 (Colo.1992)(identifying factors to be considered in finding implied private right of action in statutory or regulatory provisions not otherwise providing one). Further, even if Colorado could be said to have consented to being sued under any of

these provisions in state court, a state's waiver of immunity against suit in its own courts does not constitute waiver of its Eleventh Amendment immunity against suit in federal court. *Griess,* 624 F.Supp. at 453 (quoting *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974)). In sum, none of Cross's arguments alters the conclusion reached in *Griess,* namely, that there has been no waiver of immunity by Colorado or its state agencies from suits for damages under § 1983.

Finally, because the DOC is an agency of the state immune from suit under the Eleventh Amendment, it is not a "person" for purposes of liability under § 1983. *Will v. Michigan Dep't of State Police,* 491 U.S. at 70–71, 109 S.Ct. 2304 (by operation of the Eleventh Amendment, which applies to states and state agencies but does not apply to municipalities or other branches of local government, state entities are not "persons" subject to liability under § 1983 while branches of local government are)(citing *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). *Accord Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979)(state is not a "person" and therefore retains Eleventh Amendment immunity from suit under § 1983). Accordingly, the DOC is not subject to liability for damages under § 1983, and Plaintiffs' § 1983 claim against it must be dismissed.

### *Defendant Izor's Motion to Dismiss.*

Section 1983 imposes civil liability upon any

> person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . .

42 U.S.C. § 1983. In her Motion to Dismiss, Izor denies generally that engaging in a "code of silence" amounts to a "constitutional deprivation," and specifically denies that her conduct in notifying the DOC and investigating Cross implicated any right "secured by the Constitution and laws." Even if Cross's allegations with respect to her conduct amounted to a "constitutional deprivation," moreover, Izor argues she could not be held liable under § 1983 because she engaged in that conduct as a private citizen, not a "state actor."

■ Section 1983 establishes a cause of action only against persons who act "under color of [state] law." 42 U.S.C. § 1983. Although private parties may be held liable in certain circumstances, "a plaintiff must show . . . that the [parties'] conduct is 'fairly attributable to the State'" before a claim can be stated against them. *Pino v. Higgs,* 75 F.3d 1461, 1465 (10th Cir.1996)(quoting *Lugar v. Edmondson Oil Co., Inc.,* 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982)). Cross does not purport to make such a showing, but argues the state of Colorado has "sanction[ed] Defendant Izor's participation as a result of statutory obligations to assist a peace officer," Pls.' Resp. at p. 2 (citing Colo.Rev.Stat. § 18–8–107), thereby "creat[ing] a 'state actor' position under which Defendant Izor has been sheltered under the color of law umbrella and as such [sic]." *Id.* at 3. The statutory provision cited is clearly inapplicable. Section 18–8–107 criminalizes the "unreasonabl[e] refus[al]" by an individual "upon command" of a peace officer to aid that officer in "effecting or securing an arrest or preventing the commission . . . of any offense." Under no reading of the Complaint is that what Cross alleges Izor has done. Not only is there no allegation Izor was "commanded" by anyone constituting a "peace officer" to assist with an arrest or

the prevention of a crime, there was never any "arrest," "crime" or criminal investigation going on. Even if Izor had been responding to a "command" to aid a peace officer when she reported Cross to the DOC, moreover, the statutory provision underlying § 18–8–107 specifically provides that "[p]rivate citizens, acting in good faith, *shall be immune from any civil liability for reporting to any police officer or law enforcement authority the commission or suspected commission of any crime or for giving other information to aid in the prevention of any crime.*" Colo. Rev.Stat. § 16–3–202(4)(emphasis added).

Because Izor's conduct cannot under the facts alleged be shown to have been "fairly attributable to the State," Plaintiffs' § 1983 claim against her must be dismissed. As a result, and while I am inclined based on the arguments I have seen to agree, I do not reach Izor's argument that the deprivations alleged do not implicate rights "secured by the Constitution and laws" of the United States.

### Conclusion.

The Motions of Defendants DOC and Sandi Izor to Dismiss are GRANTED, and Plaintiff's claims against these Defendants are ordered DISMISSED with prejudice. Defendant Geist remains the sole Defendant to this action.

I note that Defendant Geist, in his Answer, raises the affirmative defense of qualified immunity. Qualified immunity is " 'an entitlement not to stand trial or face the other burdens of litigation.' " *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001)(quoting *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) and citing *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). The privilege is " 'an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.' "

*Id.* (quoting *Anderson* ). As a result, the Supreme Court has " 'repeatedly ... stressed the importance of resolving immunity questions at the earliest possible stage in litigation.' " *Id.* (quoting *Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991)(*per curiam* )).

Defendant Geist, accordingly, is ORDERED to file a motion to dismiss on his defense of qualified immunity within 30 days of the date of this Order. Once briefing on such motion is completed, I will issue a decision under the following analysis:

> A court required to rule up on the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?
>
> \* \* \* \* \* \*
>
> If no constitutional right would be violated even if the allegations were proven, then there is no necessity for further inquiries concerning qualified immunity.

*Saucier* at 2156.